## Case No. 6,201.

### HASTINGS et al. v. SPENSER et al.

[1 Curt. 504.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1853.

ASSIGNMENT FOR BENEFIT OF CREDITORS — ASSIGNEE'S AND COUNSEL FEES NOT ALLOWED WHEN FRAUDULENT—LAW OF RHODE ISLAND.

Where an assignment, made by an insolvent debtor, was held voidable, as actually fraudulent as against creditors, and the assignee either had knowledge of the extraneous facts which rendered the assignment voidable by creditors or the means of knowing them, and was put upon inquiry, it was held, that he had no lien as against an attaching creditor, upon proceeds of the property assigned, for his services in partially executing the trusts, or for retainers paid to counsel.

[Cited in Re Cohn, Case No. 2,966; Re Kurth, Id. 7,948.]

[Cited in Therasson v. Hickok, 37 Vt. 456; Clark v. Sawyer, 151 Mass. 66, 23 N. E. 726.]

[This was an action at law by George Hastings and others against Gideon L. Spenser and others.]

CURTIS, Circuit Justice. This is an action founded on the statute law of Rhode Island (Digest 118, §§ 21–24), against the defendants, as the garnishees of Horton & Brother, against whom the plaintiffs recovered a judgment at law in this court, at the June term, 1851. The questions raised in this case depend upon the facts stated in the answers of the garnishees, which are, in substance, that an assignment of a large stock of merchandise and other property, was made to them by Horton & Brother in trust for creditors, which assignment was decreed by this court to be invalid as against the plaintiffs, and other creditors of Horton & Brother, at the November term, 1852; that immediately after that assignment was made, and before any creditor had interposed, by attachment, or otherwise, to avoid the assignment, the defendants, while proceeding to execute the trusts which it declared, sold some part of the assigned property, for the proceeds of

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]

which they admit themselves to be chargeable as garnishees; but they claim to deduct from these proceeds the sum of four hundred dollars, as a compensation for their personal services in taking charge of the property, on the 10th day of March, when the assignment took effect, and keeping the same until the 17th day of March, when it was attached, and for making the sales and collections, whence the moneys now in their hands resulted, during that period of seven days. And they also claim the right to make the further deduction of the sum of five hundred dollars, for so much money paid by them to two counsel for general retainers in respect to all questions arising between themselves, as assignees, and third persons; the counsel having been retained on the fifteenth day of March, two days before any attachment of the property, though their retainers were not actually paid until some months afterwards. No question has been made before me concerning the propriety of the amounts of either of these charges, the only question being, whether any, or all of them, in part, or in whole, are in this proceeding, a legal charge upon the fund attached in the hands of the defendants. The proceedings in the suit in equity by Stewart v. Spenser [Case No. 13,-437], in which the assignment was decreed to be void, are not in terms, made part of this case; but the answers state the fact, that the assignment which is therein mentioned is the same which was thus avoided by the decree of this court, and the case has been argued, on both sides, upon the assumption that those proceedings, thus referred to, are before the court in this case.

The questions, therefore are, whether assignees, under a deed of trust for creditors, voidable by them as actually fraudulent as against them, can retain, out of the moneys received under the assignment, compensation for their personal services, rendered before any creditor interposed to avoid the deed, and for a general retainer agreed to be paid to counsel. The garnishees are to be charged or discharged, according to the state of things existing at the time of the service of the process upon them. The question is, whether they then held property or moneys of the debtor, liable to be taken out of their hands, and applied by the law in this process, in payment of debts of the principal defendant. It is not denied that these garnishees did at that time hold funds which belonged to the debtors, the deed of assignment being imperative; but the inquiry is, whether the whole of these funds were liable to be taken out of their hands, and applied by the law in this process to the payment of debts of their assignor. In Thomas v. Goodwin, 12 Mass. 140, it was held, that although the person summoned as trustee may have previously received property of the debtor for the purpose of delaying creditors, yet if he has paid the proceeds to bona fide creditors before the service of the process on him, he cannot be held as a trustee. In Andrews v. Ludlow, 5 Pick. 32, the same rule was applied to bona fide claims of the assignee himself, and it was held, that he could retain enough to pay himself the amount of all such claims, though the assignment was invalid. On the other hand, in Burlingame v. Bell, 16 Mass. 318, and Harris v. Sumner, 2 Pick. 129, it was held, that an assignment, fraudulent on its face, or actually fraudulent, could confer no lien on the assignees, so as to enable them to hold the property against the attachment thereof specifically by a creditor. These decisions are reconcilable. Because, when the assignee is proceeded against as a trustee or garnishee, he retains, to meet his claims or payments, not by force of the invalid deed, but by that principle of law which enables him to retain funds sufficient to meet his own claims and liabilities, and requires him only to pay the balance. He is under no necessity to set up the deed; he has the right of retention to that extent, if it were wholly invalid, or had never been made. And, therefore, if these garnishees had claims against the assignors, for bona fide debts, contracted independently of the assignment, I do not perceive why they might not deduct from the moneys in their hands sufficient to satisfy those debts, and by paying over the residue discharge themselves from liability. But it must be admitted, that claims for services rendered in partially executing an assignment actually fraudulent, do not stand upon the same ground as bona fide debts. If the assignees were themselves participators in the fraud, or, in other words, if they undertook to execute the trusts, knowing that they were fraudulent and unlawful, the law cannot recognize such services as ground for a legal claim for compensation, and cannot treat them as creditors of the assignors.

According to the evidence in the suit in equity, the assignee knew the contents of the assignment, and the facts that the assignors had absconded from the state, and carried with them some money, when they entered on the execution of the trusts. The circumstances were so peculiar, that I think they were at once put upon the inquiry, how much the assignors had carried away with them. Their answers declare they did not know how much, or that it was any great sum of money, until they found there was no cash on hand, and very few debts receivable. When, in point of fact, they learned this, does not appear; but it is apparent, they had the means of learning it as soon as the execution of the trust began; for they then had the books and papers of the assignors. A party who is put upon inquiry, and has the means of knowing a fact, is in equity deemed to know it. And I must therefore consider that these assignees either knew all the facts upon which the deed has been declared void, or had the means of knowing them very soon after the deed was delivered.

And when they proceeded, under these circumstances, to execute such trusts, I consider that they acted at the peril of losing all compensation for their services, if creditors should interpose and the trust be declared fraudulent, by reason of facts within their knowledge.

I do not impute to them any intentional wrong; but the principles of law must be applied to their case. Upon those principles they were executing trusts fraudulent as against creditors, and they had at least constructive knowledge of the fraud. They cannot be treated as creditors upon the footing of a claim for such services. The claim to retain for the retainers engaged to be paid to counsel is still less tenable. If they cannot retain for their own services, rendered before creditors interposed, certainly they cannot for payments made to resist creditors, by setting up a deed, invalid as against creditors, because actually fraudulent.