## SUMMERS v. ABBOTT.

(Circuit Court of Appeals, Eighth Circuit. March 23, 1903.)

No. 1,759.

1. BANKRUPTCY—ASSIGNMENT FOR BENEFIT OF CREDITORS—FRAUD—SERVICES OF ASSIGNEE—COMPENSATION.

Where an insolvent made an assignment of all his property for the equal benefit of all his creditors which contained no secret trust, and which was without fraud in fact, but was made in an honest attempt to have his property administered for the benefit of his creditors, and the assignee devoted a large part of his time in disposing of the property conveyed, and acted honestly and carefully, after conferring with attorneys representing a considerable number of the insolvent's creditors, such assignment, though constituting an act of bankruptcy, was not

fraudulent in law, under the bankrupt act; and hence the assignee, on turning over the proceeds of the sale of the property to a trustee in bankruptcy subsequently appointed, was entitled to compensation for the services of himself and his attorneys.

2. SAME—CONSTRUCTION.

The bankrupt act does not make it obligatory on an insolvent debtor to take the benefit of the act.

Appeal from the District Court of the United States for the Eastern District of Missouri.

For opinion below, see 116 Fed. 687.

On the 18th day of September, 1901, Adolph Rosenthal and Lewis J. Lehman, a partnership doing business in the firm name and style of Rosenthal & Lehman, made a general assignment of all their property for the equal benefit of all their creditors to Smith W. Summers, trustee. The assignee took possession of the property assigned to him by the deed of assignment, consisting of a large and varied stock of merchandise, and, after selling a portion thereof at retail, sold the remainder in bulk; realizing for the whole, in cash, over $40,000. On the 25th of October, 1901, the grantors in the deed of assignment were adjudged bankrupts on the petition of their creditors. On the 20th of January, 1902, A. L. Abbott was elected trustee, and on the 8th day of February filed his petition in the bankrupt court, praying that Smith W. Summers, the assignee under the deed of trust, be required to turn over to him the proceeds of the sale of the bankrupt property. The assignee did not dispute the trustee's right to the fund in his hands, but filed an answer setting out at length and in detail the services performed and expenses incurred by him in his administration of his trust, and asked for a reasonable allowance therefor, and for leave to turn over to the trustee in bankruptcy the balance of the money. Thereupon the court made the following order:

"And it further appearing to the court that the respondent, 'Summers, claims to have expended money, rendered services, and incurred obligations in caring for and preserving the estate of said bankrupts, and converting said estate into money, and it further appearing that it is necessary to take an accounting of and concerning the same in order to determine finally the amount of money to be turned over to the petitioner by the respondent, it is ordered that an accounting be had of and concerning all sums of money received by the respondent, Summers, as the proceeds of the sale of all of the property described in the petition herein, and of the collection of the accounts in said petition mentioned, and of all other sums of money received by the respondent while in charge of the property or assets of said bankrupts, and of all moneys paid out, services rendered, and obligations incurred by the defendant in caring for and preserving the estate of said bankrupts, and in converting said estate into money, and that Walter D. Coles, Esquire, be, and he is hereby, appointed special master to take such accounting, and report his conclusions thereon, together with such evidence as he may take, to this court, with all convenient speed."

The special master made a very full report on the facts and the law. He found the facts substantially as the appellant claimed them to be, but ruled against him on the law. The special master held the deed of assignment, though honest in fact, was fraudulent in law, and that the assignee under the deed should be treated as a fraudulent vendee, and denied any compensation for his services, other than "the sum of $400 as compensation for his services in preserving the property of the bankrupts subsequent to the filing of the petition in bankruptcy." The court confirmed the master's report, and respondent, Summers, thereupon appealed the case to this court.

Montague Lyon and S. L. Swarts, for appellant.

Moses N. Sale and Lee Sale, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The deed of assignment covered all the property of the bankrupts. It was honestly made for the laudable purpose of applying all the property of the debtors to the payment, ratably, of all their debts. This is conceded. No claim is made that there was a secret trust reserved for the grantors' benefit, or that there was otherwise any fraud in fact in the execution and delivery of the deed. It was not made to hinder, delay, or defraud creditors, but to pay creditors. Fraud cannot be predicated of such a deed. It constituted an act of bankruptcy, which entitled the debtors' creditors, if they saw proper to do so, to have the administration of the trust transferred from the assignee to the bankrupt court, but this is no impeachment of the honesty of the transaction; and the debtors, when adjudged bankrupts, would be entitled to their discharge, precisely as though they had made no such assignment. It is also admitted that the appellant, who was named in the deed as assignee, accepted the trust in good faith, and for the purpose of executing it according to law and the terms of the deed; and that he did execute it intelligently, successfully, and honestly, is conceded. Neither fraud in fact nor in law can be imputed to such an assignee.

The contention of the trustee in bankruptcy is that all assignments for the benefit of creditors since the passage of the bankrupt act are fraudulent, and that every assignee under such a deed is a fraudulent vendee or assignee, and hence entitled to no compensation for his services. This contention is probably grounded on the assumption that it is the legal duty of an insolvent debtor who wants to apply his property to the payment of his debts to apply to the bankrupt court to be adjudged a bankrupt, and then turn his property over to the trustee of his estate in bankruptcy. But neither in the present nor any previous bankrupt law this country has ever had will there be found any provision making it obligatory upon a debtor to go into court and have himself adjudged a bankrupt. The bankrupt act declares the making of "a general assignment for the benefit of his creditors" shall constitute an act of bankruptcy, but it nowhere declares that when the debtor has committed an act of bankruptcy he shall go into the bankrupt court and have himself adjudged a bankrupt. Many debtors who commit acts of bankruptcy struggle on and finally pay all the debts they owe, which is much more than would have been done had they gone into the bankrupt court and had themselves adjudged bankrupts. It is open to the creditors of one who has committed an act of bankruptcy to proceed to have him adjudged a bankrupt, but it is optional and not obligatory upon his creditors to do this. As a matter of fact, thousands of debtors commit acts of bankruptcy who are never adjudged bankrupts; their creditors preferring to let their debtor administer his own estate, rather than turn it over to a bankrupt court.

It is equally a mistake to suppose that every act of bankruptcy is a fraudulent act, and every bankrupt, perforce, a knave. There is nothing in the bankrupt act that lends any sanction to such a doctrine. Inability to pay debts does not constitute fraud, and is not evidence of fraud, under the bankrupt law or any other law; but it does, under certain conditions named in the bankrupt act, constitute

an act of bankruptcy. The bankrupt act was not enacted for creditors alone, but for debtors as well. It says to the creditors: "If you are not satisfied to let your crippled debtor pursue his business and try to work out and pay his debts, you can, for any of the causes set out in the act, have him adjudged a bankrupt, and all his property —save his exemptions—immediately applied to the payment of your debts; but, if you do this, your debtor will be entitled to a discharge from all further liability on account of your debts." So far is the act from treating a bankrupt as a knave and guilty of fraud because he is unable to pay his debts, that it makes him the chief beneficiary under the act. We are speaking, of course, of honest debtors.

It not being obligatory on the debtors in this case to voluntarily go into bankruptcy, and being unable to pay their debts, and having a large amount of property, which they honestly and in good faith desired should be applied ratably to the payment of their debts, they had a perfect legal right to make the deed of assignment to accomplish that laudable purpose. It was the only mode of accomplishing the object that was open to the debtors, short of applying to have themselves adjudged bankrupts, which they did not want to do, and which they were under no legal obligation to do. It constituted an act of bankruptcy, but it was not a fraudulent act; and, if no creditor chose to complain to the bankrupt court, it would remain valid and effectual for all purposes. Undoubtedly it was an act for which the debtors rendered themselves liable to be adjudged bankrupts, not because it was a fraudulent or illegal act, but because it was an act which the bankrupt law says shall constitute an act of bankruptcy. In this respect the bankrupt act is not unlike the attachment laws of most of the states. By those laws, in addition to the grounds of attachment based on the fraudulent action of the debtor, the simple nonresidence of a debtor is made a ground of attachment. Obviously a debtor is not guilty of a fraud because he does not reside in every state in which he owns property liable to attachment. And no more is an honest insolvent debtor guilty of fraud for turning over all his property to his creditors, or, what is the same thing, to an assignee for their use, to be applied to the payment of his debts according to the rule of the bankrupt law. Ill-considered expressions may be found to the effect that the bankrupt law makes it obligatory upon every insolvent debtor, belonging to any of the classes embraced by the act, to have himself adjudged a bankrupt, and brands him as a moral delinquent and stamps his every act as fraudulent if he does not do so. The law is not so harsh or so unreasonable. It does not brand every bankrupt as a rogue. There are many honest men adjudged bankrupts, and many rascals who are never adjudged bankrupts. Bankrupts, like all other persons, are to be judged by the purpose and intent of their acts.

While the creditors did proceed to have the debtors adjudged bankrupts, they seem afterward to have repented of their action, for they appear to have permitted the assignee to go forward under the deed and finally administer the estate. No proceeding was instituted to take the property out of his hands, or to restrain him from selling it, or to interfere in any manner with his administration of the

trust. He was not only permitted, but encouraged, to go forward and close up the business. The special master makes the following finding:

"The special master further finds that the respondent devoted practically all his time to the conduct of his said trust from September 18, 1901, to October 27, 1901, and that, in disposing of the property conveyed to him by bankrupts, he acted honestly, prudently, and carefully. The special master further finds that the respondent conferred with attorneys representing a considerable number of creditors as to the manner in which he was conducting or proposed to conduct the business and dispose of the property, and that said attorneys, on behalf of said creditors, gave their assent to the course of conduct followed by respondent, but that certain other creditors did not so assent to respondent's conduct of said estate."

Clearly, upon these facts, the appellant was guilty of no fraud; and he and his legal advisers should be paid a fair and reasonable compensation for their services, such as they would have been entitled to if there had been no adjudication in bankruptcy. To prevent misapprehension, it is proper to say that this case has none of the odious features about it that sometimes crop out in cases where insolvents make deeds of assignment for the professed benefit of their creditors, but which are in fact made to embarrass and defraud them, and where the assignee is a willing instrument of the fraudulent debtors. In such cases, according to an old and well-settled principle, quite independent of the bankrupt act, neither the assignee nor his attorney is entitled to any compensation for their services out of the fund.

This case seems to have been brought into this court to obtain an adjudication of the question whether the appellant is entitled to recover a fair and just compensation for his services. We think he is, but we are unable to determine from the record before us (the testimony taken by the master not being in the record) just what that compensation should be. The order, therefore, will be that the judgment of the District Court be reversed, and the cause remanded to that court, with directions to refer it to the special master, with instructions to ascertain and report to that court what sum would be a just and reasonable compensation for the appellant's services, and those of his attorneys.