In re CHASE et al.

In re B. H. GLADDING CO.

(Circuit Court of Appeals, First Circuit. June 18, 1903.)

No. 470.

1. ASSIGNMENTS—PRECEDING BANKRUPTCY—CLAIMS OF ASSIGNEES—PAYMENT—EQUITABLE LIEN.

Where an insolvent made an assignment for the benefit of his creditors, and prior to the filing of a bankruptcy petition the assignee collected dues, continued insurance on the property, arranged for guarding the same, collected outstanding goods, conducted much correspondence, took an exhaustive inventory, and incurred a liability for rent, such assignee acquired a lien on the assets for his necessary disbursements, and the reasonable value of such services as benefited the bankrupt's estate, unaffected by Bankr. Act, § 64b (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), prescribing the debts of a bankrupt entitled to priority on distribution of his estate, subject to the limitations of Randolph v. Scruggs, 23 Sup. Ct. 710, 190 U. S. 533, 47 L. Ed. ——.

2. SAME—SURRENDER OF ASSETS—WAIVER OF LIEN.

That such assignees paid to the trustee in bankruptcy the gross amount received by them, and surrendered all other assets in their hands, did not deprive them of the right to apply to the court for the payment of the amount of such lien.

3. BANKRUPTCY—EQUITIES OF TRUSTEE.

The rule applied that trustees in bankruptcy have no equities greater than those of the bankrupt, and sometimes will be ordered to do full justice, even in some cases where the circumstances give rise to no legal right, and, perhaps, not even to a right which could be enforced in a court of equity as against an ordinary litigant.

4. SAME—ASSIGNMENTS.

An assignment for the benefit of creditors, fairly made and intended to facilitate the equal distribution of the insolvent's property among his creditors, without any attempt to defraud or embarrass persons to whom he was indebted, is not so contrary to the policy of the bankrupt act as to preclude the assignee from recovering for disbursements and services made for the benefit of the estate prior to the filing of the bankrupt's petition.

Petition for Revision of Proceedings of the District Court of the United States for the District of Rhode Island, in Bankruptcy.

See 120 Fed. 709.

Seeber Edwards (James C. Collins, Jr., and Edwards & Angell, on the brief), for petitioners.

Herbert A. Rice (Walter B. Vincent and James Harris, on the brief), for respondent trustee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is a petition under section 24b of the act establishing a uniform system of bankruptcy, approved July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432], asking for a revision of the decree of the District Court for the Dis-

¶ 4. Effect of national bankruptcy act on state insolvency laws and on assignments for benefit of creditors, see note to Carling v. Seymour Lumber Co., 51 C. C. A. 11.

trict of Rhode Island in the matter of B. H. Gladding Company, bankrupt. The bankrupt is a corporation domiciled in Rhode Island, and on the 10th day of September, 1902, it made a general common-law assignment to the petitioners for the benefit of its creditors, directing an equal distribution among them. No criticism is made of the terms of the assignment, nor any suggestion that it was not framed in all respects for the advantage of all the creditors. The assignor was carrying on a retail dry goods store in Providence, and it had a lease of the premises occupied by it therefor. The petitioners entered into possession of the stock, and held the same until the assignor was subsequently adjudged bankrupt. Meanwhile they continued the business on the leasehold premises. They thus became subject to a claim on the part of the owner of the fee of the leased premises for a certain proportion of the accruing rent thereof. The question of liability for rent is not in form to be completely disposed of by us, and it will remain to be adjusted by the District Court, subject to the rules which we announce herein. The case further shows the following:

"While in possession of the store the assignee collected certain bills due to the company, amounting to $9,190. They continued the insurance upon the property, arranged for the watching and guarding of the stock in the store, and of the books and papers of the company, got in certain goods of the company which were outstanding, disposed of certain claims against the company, finished up and delivered certain goods made to order, cared for the horses and wagons of the company, conducted much correspondence, and took an exhaustive inventory of the property of said company."

The petitioners turned over to the trustee in bankruptcy all the assets, and submitted to the District Court their claims for compensation for their disbursements and for an allowance for their services, and for protection against the demand made by the owner of the leased premises. The referee rejected all, and the District Court, without any opinion and in a formal manner, entered a decree affirming his decision. The question involved seems to have been under discussion since the enactment of the bankruptcy act of March 2, 1867, 15 Stat. 227, c. 258. Bump's Bankruptcy (10th Ed.) 848.

It cannot be questioned on this record that the disbursements and services of the assignees were desirable for the preservation of the assets, and for maintaining them so as to yield the largest net return, and so, at least in part, inured to the benefit of the creditors in the bankruptcy. Of course, compensation could not be based on a percentage of the assets, or on any consideration except that of a moderately reasonable allowance for the attention given the property, according to the portion of time which the assignees used therefor, all to be adjusted in such way as not to throw on the estate a double burden of any serious consequence. It can hardly be necessary to argue that such reimbursement and compensation would be in accordance with general equity.

The trustee, however, seems to understand that the case is governed by section 64b of the statute (Bankr. Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), which is as follows:

"The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the actual

and necessary cost of preserving the estate subsequent to filing the petition; (2) the filing fees paid by creditors in involuntary cases; (3) the cost of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases, as the court may allow; (4) wages due to workmen, clerks or servants which have been earned within three months before the date of the commencement of proceedings, not to exceed three hundred dollars to each claimant; and (5) debts owing to any person who by the laws of the states or the United States is entitled to priority."

Some of the propositions of the petitioners give color to this understanding of the trustee, but it is without any proper basis. The provision of statute quoted has no relation to this subject-matter. It applies only to sums over which the court in bankruptcy has jurisdiction as such court. In the present case, the claims of petitioners constituted a lien on the assets in their hands adverse to the trustee, and the portion of the statute cited appertains to nothing of that nature. If there had been any doubt on the point, it was removed by Louisville Trust Company v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413. The claims of the petitioners depend altogether on general principles of law, by virtue of which they might have retained assets in their hands until their lien was satisfied.

The fact that, under the circumstances, the petitioners paid the trustee the gross amount received by them, and delivered them the other assets, does not, as is clearly settled, deprive them of the right to apply to the court for payment of the sums for which they once had a lien. It is settled that a trustee in bankruptcy has no equities greater than those of the bankrupt, and that he will be ordered to do full justice, even in some cases where the circumstances would give rise to no legal right, and, perhaps, not even to a right which could be enforced in a court of equity as against an ordinary litigant. Williams' Law of Bankruptcy (7th Ed.) 191. Indeed, bankruptcy proceeds on equitable principles so broad that it will order a repayment when such principles require it, notwithstanding the court or the trustee may have received the fund without such compulsion or protest as is ordinarily required for recovery in the courts either of common law or chancery. Hutchinson v. Le Roy, 113 Fed. 202, 205, 51 C. C. A. 159; Hutchinson v. Otis, 115 Fed. 937, 940, 53 C. C. A. 419; Batchelder & Lincoln Company v. Whittemore (C. C. A.; decided April 23, 1903) 122 Fed. 355. Indeed, so sweeping is this rule that in Hutchinson v. Otis, 115 Fed., at page 940, 53 C. C. A. 422, we said that parties having an interest might not be held by a court of bankruptcy even to a mistake merely of law. Its breadth is also shown in Lowell on Bankruptcy, § 310, where it is said that it has been established ever since 1742, beginning with Scott v. Surman, Willes, 400, and that it is so sweeping that, in actions at law brought by assignees in bankruptcy, defendants may prevail on merely equitable defenses. How it happened that jurisdiction in bankruptcy became of an equitable nature is explained historically in an interesting way in Robson's Bankruptcy (2d Ed.) at page 2.

But there seems to be an impression that the statutes in bankruptcy have denounced assignments at common law for the benefit of creditors to such an extent as to mark them as so far against the policy of the law that all parties thereto are particeps criminis, and that none can establish thereunder any rights pro or con. There are several answers thereto. First of all, even if assignments were strictly void as such, the assignees, until the intervention of proceedings in bankruptcy, would stand as the agents of the assignors, coupled with possession; and so, having acted innocently in their behalf, they would become entitled as such agents to receive their disbursements and a reasonable compensation, and to hold a lien therefor on the property in their hands. This was well stated by Mr. Justice Brown, then a district judge, in Hunker v. Bing (D. C.) 9 Fed. 277, 281, where, under a previous statute in bankruptcy, he said that the respondent in that case, who was an assignee under a common-law assignment, might be regarded as a "factor or agent" of the assignor; so that he might be held "as having done what he did under an implied request to that effect, and to have acquired thereby an equitable lien upon the property in his possession for his necessary services and disbursements therein, which should be respected in bankruptcy so far as they have been necessary and beneficial to the general creditors, or such as the assignee in bankruptcy would otherwise have incurred." Mr. Justice Gray, in Bryan v. Bernheimer, 181 U. S. 188, 192, 193, 21 Sup. Ct. 557, 45 L. Ed. 814, noticed the same fact when he said that an assignee under a general assignment is not one for value, but simply "an agent" for the distribution of the proceeds of the debtor's property among his creditors.

Indeed, this proposition of agency is well illustrated by the fact that, ordinarily, common-law assignments contain a clause expressly making the assignee the agent of the assignor; but this clause, of course, is not necessary, because, if the assignment becomes ineffectual as an assignment and as creating a technical trust, the agency is implied by law. On the other hand, it is not to be inferred that the assignor and the assignee are at liberty to create the terms of this agency at their own option. From the time the assignor declares his insolvency by making an assignment, his property must be held equitably for the benefit of his creditors, and he can do nothing which will embarrass or prejudice them in realizing therefrom, whether the result is that they are administered under the common-law assignment or ultimately go into the hands of a trustee in bankruptcy. Therefore, in no event can he impress on them a lien for any amount of compensation arbitrarily agreed on. Anything in this direction beyond what would be reasonable and equitable would be contrary to the policy of the law, and would be declared invalid by the court having jurisdiction of the trust if the assignment is worked out at common law, or by the court in bankruptcy if the property finally comes under its control.

These principles fully justify a reasonable claim on the part of the petitioners. No authority cited to the contrary, either under the present statutes of bankruptcy or any previous act, is of sufficient weight or force of reasoning to preponderate against this conclusion.

Therefore, even if it could be sustained that the statutes denounce these assignments as contrary to their policy, the especial proposition correctly announced by Mr. Justice Brown would require that the decree under consideration should be reversed.

In illustration of this conclusion, it is to be noted that, even in cases of conveyances which are fraudulent at common law either by implication or intent, no such decisive rule exists as that claimed by the trustee. It is obvious that even one who receives a conveyance fraudulently may render such services with reference to the property involved as to enhance its value as it finally comes into the possession of creditors. It is also evident that under such circumstances there would be no equity in permitting the creditors to receive such enhanced value without compensation therefor. Of course, no allowances could be made when the property is recovered from the fraudulent purchaser by a suit at common law; but it is otherwise when the creditors find it necessary, for the purpose of impeaching the fraudulent conveyance, to apply to the chancery courts for their assistance. This is stated in Clements v. Nicholson, 6 Wall. 299, 312, 18 L. Ed. 786, as follows:

"A sale may be void for bad faith though the buyer pays the full value of the property bought. This is the consequence where his purpose is to aid the seller in perpetrating a fraud upon his creditors, and where he buys recklessly, with guilty knowledge. When the fact of fraud is established in a suit at law, the buyer loses the property without reference to the amount or application of what he has paid, and he can have no relief either at law or in equity. When the proceeding is in chancery, the jurisdiction exercised is more flexible and tolerant. The equity appealed to, while it scans the transaction with the severest scrutiny, looks at all the facts, and, giving to each one its due weight, deals with the subject before it according to its own ideas of right and justice. In some instances it visits the buyer with the same consequences which would have followed in an action at law. In others it allows the security to stand for the amount advanced upon it. In others it compels the buyer to account only for the difference between the under price which he paid and the value of the property. In others, although he may have paid the full value, and the property may have passed beyond the reach of the process of the court, it regards him as a trustee, and charges him accordingly. Where he has honestly applied the property to the liabilities of the seller, it may hold him excused from further responsibility. The cardinal principle in all such cases is that the property of the debtor shall not be diverted from the payment of his debts to the injury of his creditors by means of the fraud."

This was cited with approval in Davis v. Schwartz, 155 U. S. 631, 639, 15 Sup. Ct. 237, 39 L. Ed. 289, and its rules are accepted by leading authorities. Wait on Fraudulent Conveyances (3d Ed.) 346. What was said by Mr. Justice Curtis in Hastings v. Spenser, 1 Curt. 504, Fed. Cas. No. 6,201, must, of course, be qualified by the later decision in Clements v. Nicholson. If equity applies such rules with reference to conveyances which are denounced by the common law as properly fraudulent, how much more liberally will it apply them to transactions like that at bar.

But neither the present statutes of bankruptcy nor any prior act do, or did, unqualifiedly denounce an assignment like that at bar, intended for the equal distribution of the property of a failing debtor among creditors, without any attempt to defraud or embarrass per-

sons to whom he is under liability. In this respect, assignments at common law stand precisely as do proceedings for the appointment of receivers by federal courts or state courts, which, under the act to amend the Act of July 1, 1898, approved February 5, 1903, become a sufficient basis for an involuntary petition. In section 2 of that act (32 Stat. 797, c. 487), the making a general assignment and an application for a receiver, under the circumstances named therein, are classed together; so that there is nothing in the terms of the present statutes of bankruptcy to justify a claim that an assignment for the benefit of creditors, like that at bar, is any more in fraud of the statutes, or denounced by them, than the action of a state tribunal, which may be one of the highest authority, in proceeding on an honest application for a receiver. It can be no more reprehensible to make an assignment in favor of creditors, free from any attempt to embarrass them and from any dishonest purpose, than to apply to a federal court or state court for the appointment of a receiver; and the bankruptcy statutes do not seek to punish one more than the other.

It was suggested at bar that the present statutes in bankruptcy put some mark of reprobation on assignments for the benefit of creditors beyond any prior like legislation; but no specification of any reasons for this assertion was given us, nor any authority cited in support thereof. There is nothing peculiar in the language of the existing statutes in support of such a proposition. Therefore the decisions of the Supreme Court under prior legislation have full effect, especially as that court then held that a general assignment for the benefit of creditors was an act of bankruptcy. West Company v. Lea, 174 U. S. 590, 595, 19 Sup. Ct. 836, 43 L. Ed. 1098. That there was nothing unlawful in such an assignment, but that it was merely voidable by proceedings in bankruptcy, and meritorious unless avoided, has been clearly affirmed by the Supreme Court under the prior statutes. Mayer v. Hellman, 91 U. S. 496, 23 L. Ed. 377, contains nothing of much importance on this topic, as it relates simply to an assignment made earlier than the period with reference to which it could be avoided by the bankruptcy. The opinion, however, observes, at page 501, that the assignment in that case was not a proceeding in hostility to the creditors, but for their benefit. In Reed v. McIntyre, 98 U. S. 507, 25 L. Ed. 171, a creditor who had levied an execution on assigned property sought to obtain a priority over the bankrupt's estate in whose behalf the assignment had been avoided. The opinion, at page 509, observes that the assignment was made in good faith, for the purpose of securing an equitable distribution, and without any intent to hinder, delay, or defraud creditors. At page 512 it refers to the fact that there had been no controversy between the assignee in bankruptcy and the assignee under the common-law assignment, which, it says, was "due, doubtless, to the fact that the administration of the debtor's effects in the bankruptcy court would accomplish the same end designed by the assignment; namely, the distribution of the property for the equal benefit of all the creditors." This is enforced again at page 513, where the opinion observes that, even if the assignment was an act of bankruptcy—and we have already observed it was subsequently determined that it was—yet it was not

invalid except with reference to proceedings under the statute. It further observes, in effect, that the object of a general assignment conforms to the policy of the statutes of bankruptcy; because it says that, if it should be held that the litigating creditor in that case could have accomplished his purpose, the result, in his obtaining priority over the other creditors, would have been that the bankruptcy proceedings were the instrument of defeating the very purpose which the bankruptcy statute intended to serve, namely, the same distribution among the creditors which the assignment sought to accomplish. Boese v. King, 108 U. S. 379, 27 L. Ed. 760, goes even further in its statements. There was a dissent, but it did not touch any question we are considering. It arose out of the fact that the assignment was made with expressed reference to a state statute which had been rendered inoperative by the bankruptcy legislation of Congress. At page 385 the court suggested what was afterwards held, as we have already said, in West Company v. Lea, supra, that a general assignment for the benefit of creditors was an act of bankruptcy. On page 386 the opinion adds that, in the absence of proceedings in bankruptcy, and so long as the debtor did not object, "the assignees had authority to sell the property and distribute the proceeds among all the creditors." The opinion then considers the effect of the local statute. On page 387 it repeated the observation made in Reed v. McIntyre, that, except as against proceedings in bankruptcy, the assignment was valid for the purpose of securing an equal distribution of the estate among all the creditors in proportion to their several demands.

Nothing in these expressions of the Supreme Court declares that general assignments, honestly made, are contrary to the policy of the bankruptcy statutes; and, on the other hand, they are declared to be in harmony therewith. The trustee, however, relies on Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, and In re Sievers (D. C.) 91 Fed. 366, affirmed in Davis v. Bohle, 92 Fed. 325, 34 C. C. A. 372. The question before us, however, was not considered in any of those cases; and, indeed, the only authority brought to the attention of the court which we are called on to accept is Louisville Trust Company v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413. The case immediately preceding, Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, to a certain extent broadened the application of Bryan v. Bernheimer; but Louisville Trust Company v. Comingor gave a new limitation with reference to proceedings involving questions of the claims of assignees like those at bar, which left the decisions relied on by the trustee inapplicable. It is true the court did not pass directly on the present issue. It held, however, that an assignee under a general assignment for the benefit of creditors who makes a claim for services and disbursements, notwithstanding the assignment has been set aside by subsequent proceedings in bankruptcy, has so far an adverse right that he may be entitled to an adjudication thereon by a court of general jurisdiction, so that Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, applies. This excludes the cases now relied on by the trustee. The implication from Louisville Trust Company v. Comingor, however, is very forcible, because, if the law is absolute, as

claimed by the trustee and as held in the decree appealed from, that such assignees as those at bar can maintain no claim for services and disbursements, the case decided in Louisville Trust Company v. Comingor would apparently have been anticipated by Bryan v. Bernheimer, as supplemented by Mueller v. Nugent. If the assignee in Louisville Trust Company v. Comingor had in law no shadow of claim, Bryan v. Bernheimer would have sufficiently disposed of him.

On the whole, it is plain that, under the special circumstances of many cases of this character, there may arise a strong equity in favor of such allowances as are now claimed, and that there is no provision of statute, and no declaration of any court of authority, holding that, as a matter of law, they should never be granted. On the other hand, so far as there are any indications which we are bound to regard, they are to the contrary. Therefore, in the present case, the District Court should ascertain and determine whether, under all the circumstances, the petitioners are equitably entitled to their disbursements, or any part thereof, reasonable allowances for their services, and protection against outstanding claims for rent. None of these matters should be disposed of on any arbitrary rule of law that neither class of allowances can be made, but they should be determined according to what is reasonable and equitable in view of all the conditions.

Since this was prepared, the Supreme Court passed down its opinion in Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. ——, which assures us that the conclusion reached herein is correct. Nevertheless, Randolph v. Scruggs does not cover all the details involved at bar. Moreover, the directions and accompanying explanations herein contained seem necessary for the guidance of the District Court. We note, however, that Randolph v. Scruggs, at page 539, 190 U. S., page 712, 23 Sup. Ct., 47 L. Ed. ——, is careful to hold that an equitable and reasonable allowance for the services of assignors like the petitioners is for only such as have "benefited the estate." Therefore that limitation, and all the phraseology of the opinion in Randolph v. Scruggs, must be understood as adopted by us. Summers v. Abbott, 122 Fed. 36, decided by the Circuit Court of Appeals for the Eighth Circuit, sustains our conclusions, although it omits the limitation imposed by the Supreme Court.

Let there be a decree in accordance with our opinion passed down this day, with costs for the petitioners.