### GORHAM v. BUZZELL.

(District Court, D. Maine. April 5, 1910.)

#### No. 55.

1. FRAUDULENT CONVEYANCES (§ 47*)—SALES IN BULK—STATUTES.

Failure to comply with Laws Me. 1905, c. 114, regulating sales of merchandise in bulk, does not render the sale fraudulent as a matter of law.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 34; Dec. Dig. § 47.*]

2. BANKRUPTCY (§ 279*)—SALES—SALES BY BANKRUPT IN VIOLATION OF BULK STOCK LAW—RIGHTS OF BANKRUPT'S TRUSTEE.

Where a sale in bulk by a bankrupt had been made in good faith and for more than the value of the goods, though not complying with Laws Me. 1905, c. 114, regulating such sales, the only aid for which the bankrupt's trustee could invoke the jurisdiction of a court of equity was to enable him to reach either the goods or the money.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 419–424; Dec. Dig. § 279.*]

In Equity. Action by George A. Gorham, as trustee in bankruptcy of G. D. Meldrim & Co., against William F. Buzzell. Bill dismissed.

Powers & Archibald, for complainant.

William H. Gulliver and Philip G. Clifford, for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HALE, District Judge. The case comes before the court upon a petition in the nature of a bill of equity, and is heard upon bill, answer, and proofs. The bill alleges that G. D. Meldrim & Co., copartners in trade at Houlton, were adjudicated bankrupts on the 29th day of December, 1906; that, previous to the bankruptcy, on the 22d day of November, 1906, Guy D. Meldrim, acting in behalf of the copartnership, which was then insolvent, attempted to sell to one Doherty, who was then acting as attorney for the respondent, William F. Buzzell, all the goods of said partnership, consisting of furniture and carpets and other merchandise, in bulk, contrary to the provisions of chapter 114 of the Public Laws of Maine, 1905, "An act to prevent sales of merchandise in bulk." This act provides that the sale in bulk of any part or the whole of a stock of merchandise, otherwise than in the ordinary course of trade, shall be void as against the creditors of the seller, unless certain notices are given and certain other requirements of the law are complied with. The bill further alleges that by reason of the failure of the bankrupts and purchaser to comply with the provisions of the act the attempted sale was fraudulent; that the complainant, as trustee, gave a written notice to the respondent that he claimed the sale to have been in violation of the bulk law, and made a demand upon the respondent. He prays that the sale be declared void as against creditors, and that the respondent be ordered to restore to petitioner the goods, and to account for sales. The answer sets up that the bulk law of Maine, in 1905, is unreasonable, unconstitutional, and void, but that its provisions had been complied with by the respondent, and, further, that the complainant has no grounds to support his claim, and that it is inequitable and unjust to attempt to avoid said sale. This last clause of the answer, although informal, may be taken as an allegation that the bill is without equity. The case was referred to Edwin L. Vaill, Esq., special master. I quote from his findings:

"There is no question of the sale to Buzzell by the Meldrim Company. There is no question as to the price paid for the stock of goods and fixtures, and no question as to Mr. Doherty's authority to act as agent of Mr. Buzzell in the transaction. There is no fraud proven in the transaction, and as a matter of fact I find that Mr. Buzzell and his agent, Doherty, acted in perfect good faith in the purchase of the stock, and the price agreed, to wit, $6,287.05, was the uttermost limit of the value of the stock."

The master further finds that Mr. Buzzell was to pay Meldrim & Co. $4,000, and to assume open accounts against the firm for the balance of the purchase price, or to pay in full certain creditors named in a list furnished by Meldrim; that the $4,000 was paid by two drafts of $2,000 each, one on November 19, and one on November 28, 1906. The master refers to the fact that the defendant admits in his answer that the $2,000 paid on November 19th was for the purpose of paying a certain chattel mortgage against the stock, and paying up certain other debts which Meldrim & Co. desired to pay personally. The master further finds, as a fact, that the respondent had bound himself to pay rather more than the stock was worth, and that the evidence as to the condition of the stock leads him to the conclusion that $5,500 would be a fair value for it, and that there is no question but that Buzzell has already paid nearly all that amount, if not more than that

amount, and "has obligated himself to pay far in excess of the original purchase price, as set forth in his answer." The special master finds certain acts of Meldrim & Co. in endeavoring to comply with the provisions of the statute. He does not, however, decide whether or not there was a sufficient compliance with the statute, but leaves that question to the court.

1. It will be seen that the special master has found that there was no fraud proven in the transaction. From an examination of the act it is found that, unlike the Massachusetts act, the Maine law does not make the sale and purchase in bulk fraudulent. Fraud is a fact, which may or may not be found in any case. In the case at bar a full consideration was given for the purchased property. The purchase price has nearly all been paid, and no question is raised but that the balance must be paid. In Adams v. Young, 200 Mass. 588, 86 N. E. 942, under a similar state of facts, the court found that the bill was without equity, because there had been no tender to the purchaser of the amount of the purchase money, and because the complainant had already had the full benefit of the purchase money. This follows the reasoning of the courts in other Massachusetts cases, where it has been held that, however fraudulent a contract, if the party who purchased the goods has repented of the fraudulent purpose and restored the goods to the principal, he would not have been held in fault; and the court says:

"We see no reason why a bona fide payment of debts due from the principal to the value of the goods, or even an actual and bona fide assuming to pay debts to that value, should not be equivalent to a restoration of the goods." Crowninshield v. Kittridge, 7 Metc. (Mass.) 520, 523; Bank v. Haskins, 3 Metc. (Mass.) 332, 37 Am. Dec. 140.

It is true that courts have sometimes found a sale void for bad faith, even though the buyer paid full value for the property. This is done where the purpose of the buyer is to aid the seller in effecting a fraud upon his creditors, or where he has bought recklessly, or with a guilty knowledge.

In the case of In re Chase, 124 Fed. 757, 59 C. C. A. 629, Judge Putnam has commented upon the ample relief which is offered by equity courts, even when such relief could not be administered at common law; and he refers to a line of decisions which illustrates the extent to which federal courts have gone in cases somewhat similar to the case at bar. He quotes from the language of Mr. Justice Swayne in speaking for the Supreme Court in Clements v. Moore, 6 Wall. 299, 312, 18 L. Ed. 786:

"When the fact of fraud is established in a suit at law, the buyer loses the property, without reference to the amount or application of what has been paid, and he can have no relief either at law or in equity. When the proceeding is in chancery, the jurisdiction exercised is more flexible and tolerant. The equity appealed to—while it scans the transaction with the severest scrutiny—looks to all the facts, and, giving to each one its due weight, deals with the subject before it according to its own ideas of right and justice. In some instances it visits the buyer with the same consequences which would have followed in an action at law. In others, it allows the security to stand for the amount spent on it. In others, it compels the buyer to account only for the difference between the under price which he has paid and the value of the property. In others, although he may have paid the full value, and the property may have passed beyond the reach of the process of the court, it regards

him as a trustee, and charges him accordingly. Where he has honestly applied the property to the liability of the seller, it may hold him excused from further responsibility. The cardinal principle is that the property of the debtor shall not be diverted from the payment of his debts to the injury of his creditors by means of a fraud."

In the case at bar the sale is not fraudulent in fact, and it is not made so by law. The good faith which is shown in the transaction on the part of the respondent should be considered by the court, as it was in Thomas v. Goodwin, 12 Mass. 140, and as it has always been considered in actions in equity, as pointed out in the cases to which I have referred. In the case before me the only occasion for which the complainant could invoke the aid of a court in equity would be for the purpose of enabling him to reach either the goods or the purchase money. But by the acts of the parties themselves the purchase has already been reached; an ample price has been allowed for the property, of which nearly all has been paid; and the balance is to be paid by the respondent.

Upon the principles announced by the Massachusetts court, upon the principles of the bankruptcy law, and upon the general principles of chancery courts, I am constrained to find that there is no equity in the bill.

The bill is dismissed, with costs.