## In re A. J. WATERMAN MFG. CO.

(District Court, D. Maine, S. D. September 5, 1923.)

No. 427.

1. **Bankruptcy ⬅346—General statute as to priority of debts due United States held inapplicable.**

Right of United States to priority in payment of taxes and other debts due from bankrupt estate is governed by Bankruptcy Act, § 64, subsecs. "a" and "b" (Comp. St. § 9648), and Rev. St. § 3466 (Comp. St. § 6372), giving debts due the United States priority, does not apply.

2. **Bankruptcy ⬅347—Services of common-law assignees and accountants employed by them held entitled to allowance as preferred claims.**

Where services of common-law assignees carrying on bankrupt's business before bankruptcy and expenses incurred by them were beneficial to estate, and services were such as trustee would have been compelled to render if the work had not been already done, their claim for their services and for services of accountants necessarily employed by them is entitled to allowance as preferred claim as part of costs of administration.

3. **Bankruptcy ⬅345—Claim of government and claim for wages not entitled to priority as against other preferred claims.**

Claim of Comptroller General of the United States against bankrupt for breach of contract and claims for wages earned within three months preceding filing of petition are not entitled to priority of payment as against costs of administration, claims of common-law assignees for services beneficial to the estate, or claims for taxes.

4. **Bankruptcy ⬅346—Claims for taxes due government and municipality on an equality.**

Under Bankruptcy Act, § 64, subsecs. "a" and "b" (Comp. St. § 9648), claim for taxes due the United States has no priority over claim for taxes due a city, and they are on an equality.

5. **Bankruptcy ⬅347—Expenses of administration, including claims of common-law assignees, entitled to priority over claims for taxes.**

Under Bankruptcy Act, § 64, subsecs. "a" and "b" (Comp. St. § 9648), costs of administration, including expenses of common-law assignees in preserving estate, are entitled to priority over claims for taxes.

In Bankruptcy. In the matter of the A. J. Waterman Manufacturing Company, bankrupt. Questions of priority as between preferred claims determined.

Frederick R. Dyer, of Portland, Me., for the United States.
Harry C. Wilbur, of Portland, Me., for city of Portland.
Irving Vernon, of Portland, Me., for petitioning creditors.
Hinckley & Hinckley, of Portland, Me., for bankrupt.

HALE, District Judge. I appointed a special master to report to the court a list of all the unpaid expenses of administration and all the priority claims against the bankrupt company, with a statement of the amount in the hands of the trustee available to pay the expenses and claims. The special master reports that a final account of the trustee shows an amount of $10,851.71 available to pay the expenses of administration and priority claims. The amount of such expenses

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and claims greatly exceed the amount of $10,851.71. It is therefore necessary to decide with reference to the priorities to be allowed.

[1] 1. Among these claims for priority is a claim by William F. Spear and John T. Neff, as common-law assignees, for a balance amounting to $3,417.97, claimed for services and disbursements preceding bankruptcy. There is also a claim for taxes by the collector of internal revenue, in behalf of the United States of America, in the sum, with interest, exclusive of penalties, of $8,827.03. There is a claim, also, by the city of Portland for taxes amounting to $6,210.19. There are also three small claims, one founded on breach of contract, and two for wages.

The learned counsel for the United States calls the attention of the court to section 3466 of the United States Statutes (Comp. St. § 6372), which provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate, and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

He urges that the above statute controls the Bankruptcy Act, so far as establishing priority of the government over trustees, assignees, or taxes due any city, state or municipality; that the statute is in pari materia with the Bankruptcy Act; that the United States has priority as to the debts due it, to the extent of the entire amount in the hands of the trustee, and that such priority is over all claims of every nature; that the city of Portland is not entitled to share with the government, but must await payment of the government debt for taxes, before it can collect the taxes due to the city. Reference is made to the following cases: United States v. Barnes (C. C.) 31 Fed. 705; Bayne v. United States, 93 U. S. 643, 23 L. Ed. 997; In re Stoever (D. C.) 127 Fed. 394; Lewis, Trustee, v. United States, 92 U. S. 618, 23 L. Ed. 513; and other cases.

In Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U. S. 152, 32 Sup. Ct. 457, 56 L. Ed. 706, the Supreme Court had under consideration section 3466 and the two following sections, they being a reproduction of the United States statute of 1797, with immaterial changes. The court held that in the Bankruptcy Act of 1867 is found a reaffirmation of this statute of 1797; but there is no such affirmation of that statute in the Bankruptcy Act of 1898. The court found a change in the provisions of the law, and also a change of purpose on the part of Congress, so that the Barnes Case, and other cases cited by the district attorney in the case before me, applied to proceedings under the act of 1867, but do not apply to proceedings under the present Bankruptcy Act of 1898. In Re Jacobson, 263 Fed. 883, in 1920, the Circuit Court of Appeals of the Seventh Circuit passed upon this statute. In speaking for the Circuit Court of Appeals,

Judge Evans cited sections 64a and 64b of the present Banrukptcy Act of 1898 (Comp. St. § 9648), as follows:

Bankruptcy Act, § 64a: "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."

Bankruptcy Act, § 64b: "The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the actual and necessary cost of preserving the estate subsequent to filing the petition; (2) the filing fees paid by creditors in involuntary cases; * * * (3) the cost of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases, as the court may allow: (4) wages due to workmen, clerks, traveling or city salesmen, or servants which have been earned within three months before the date of the commencement of proceedings, not to exceed three hundred dollars to each claimant; and (5) debts owing to any person who by the laws of the States or of the United States is entitled to priority."

He then observed:

"The first section quoted is a general statute. It existed prior to the passage of the Bankruptcy Act and was partly superseded by that act. In other words, sections 64a and 64b of the Bankruptcy Act are in pari materia with section 3466. Debts due the United States, other than taxes are not given the same protection in the two cited sections of the Bankruptcy Act as existed under the general statute, section 3466, or under the Bankruptcy Act of 1867."

Judge Evans cites the decision of Justice McKenna in Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., quotes from it, and adds:

"We have quoted thus freely to justify the elimination from this case * * * of section 3466, Revised Statutes, confidently relied upon by * * * the government."

Judge Evans concludes that, in that case, if the petitioners' claim were entitled to priority, it must be by section 64a of the Bankruptcy Act, and he found that the priority given to taxes must be over "creditors"; that "creditors" of the bankrupt shall not be entitled to dividends until the taxes are paid, but there is no recognition of priority in favor of taxes, except as to creditors; and that the term "creditors" cannot be construed by any stretch of the definition of that term to include—

"clerk, trustee, referee, or any one whose relation with the bankrupt, or the bankrupt's estate began subsequent to the filing of the petition in bankruptcy."

In concluding, Judge Evans holds that it is not conceivable that Congress should confer on the District Court power to administer bankrupt estates, and sequester and preserve property, and yet deny to the court the right to protect its officers in the performance of their duties, notwithstanding such performance of duties and such admin-

istration of the insolvent estate is for the benefit of the taxing powers, even more than it is for the general creditors. New Jersey v. Lovell, 179 Fed. 321, 102 C. C. A. 505, 31 L. R. A. (N. S.) 988.

In the matter before the court here, the cases referred to by the district attorney, for the United States, are early cases, and are of no application in view of the act of 1898, as construed in the cases cited.

[2] 2. I now pass to the consideration of claim of Spear & Neff, the common-law assignees. To these assignees, in November of 1921, a common-law assignment was made of the estate of A. J. Waterman Manufacturing Company. Under this assignment, the assignees continued the business for some two months for the purpose of completing the manufacture of certain goods and of disposing of the assets of the company at a fair value. They collected some accounts due the company, and incurred expenses of administration, including rent, insurance, taking of inventory, and examination of matters relating to charges of fraud; there appearing to be evidence of overvaluation of assets and gross overstatement of income. Attorney's fees and accountants' fees had to be paid. In February, 1922, an involuntary petition in bankruptcy was filed, and a trustee was appointed on March 18, 1922. Under the early bankruptcy cases, courts held that an assignment at common law was a fraudulent act. In the progress of commercial and bankruptcy law, courts tended to the opinion that, if voluntary assignees under a common-law assignment proceed in good faith, and act for the benefit of the estate and for the interest of all the creditors, they must be protected; that if acts are clearly done for the benefit of the estate, they should be held valid, whether these acts were done by a trustee in bankruptcy or a common-law assignee.

In Re Chase, 124 Fed. 753, 59 C. C. A. 629, Judge Putnam, in speaking for the Circuit Court of Appeals for this circuit, held that, if an assignment for the benefit of creditors be fairly made and intended to facilitate the equal distribution of the insolvent's property among the creditors, without any attempt to defraud or embarrass persons to whom he was indebted, it is not so contrary to the policy of the Bankruptcy Act as to preclude the assignee from recovering for disbursements and services made for the benefit of the estate prior to the filing of the bankrupt's petition.

In Summers v. Abbott, 122 Fed. 36, 58 C. C. A. 352, the court held that in the absence of fraud, a common-law assignee is entitled to a fair compensation for himself and his attorneys, such as they would have been entitled to, had there been no adjudication in bankruptcy. See In re Scholtz et al. (D. C.) 106 Fed. 834; City of Richmond v. Bird, 249 U. S. 174, 39 Sup. Ct. 186, 63 L. Ed. 543; Collier on Bankruptcy (12th Ed.) p. 993, and cases cited in the notes.

The courts in this circuit have followed the opinion of Judge Putnam in the Chase Case. In Re Morris & Rice (D. C.) 258 Fed. 713, 715, Judge Morton, following the same general line, observed:

"The principles by which the account is to be settled are well established. The common-law assignee will be allowed for such expenses as were reason-

ably incurred in the care and preservation of the property, and therefore inured to the benefit of the bankrupt estate. Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165; In re Chase, 124 Fed. 753, 59 C. C. A. 629 (C. C. A. 1st Cir.). Before the petition in bankruptcy is filed, the rule will be leniently applied, and the assignee will be given the benefit of any fair doubt so long as he keeps within the powers conferred upon him in the instrument of assignment."

In Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165, above cited, the Supreme Court laid down the general rule that, in order for services and disbursements of an assignee to obtain a preference, they must be known to be beneficial to the estate. The court said:

"The services to the voluntary assignee may be allowed so far as they benefit the estate, and inasmuch as he would be allowed a lien on the property if he had paid the sum allowed, the appellants may stand in his shoes and may be preferred to that extent."

In the case before me the testimony taken before me clearly shows that the common-law assignee acted for the benefit of the creditors; that they were confronted with a situation tending to show fraud on the part of the bankrupt; that it became their clear duty to investigate alleged fraudulent transactions; that they were compelled to employ experienced and able counsel; that they were also compelled to employ competent and expert accountants who made a careful and thorough examination of the transactions; that if these accountants had not been employed by the assignees it clearly would have been the duty of the trustee in bankruptcy, after he was appointed, to employ such accountants and to make such investigation; that such services were necessary in the "preserving of the estate."

After a careful consideration of the testimony, I am brought to the conclusion that the services and expenses of the assignee were beneficial to the estate, and I so find; that the services were such as the trustee in bankruptcy would have been compelled to render, if the work has not been already done by the common-law assignee, and, indeed, he has so testified before me.

The disbursements made by the common-law assignee include a bill of Jordan & Jordan, experienced accountants, who did competent service in investigation of alleged fraud on the part of the bankrupt. These services were in part paid by the common-law assignee, and in their unpaid bills is a balance amounting to $1,663.34 to Jordan & Jordan. While I regard this as a lawful bill, under all the circumstances of the case, I am impelled to make some reduction in their charges, as is shown by the schedule of claims allowed, which I file with this opinion. After making such reduction, I allow the claim of the common-law assignees.

## Claims under a Contract and for Wages.

[3] 3. The special master's report shows that there is a claim by the Comptroller General of the United States for breach of contract, amounting to $99.65. The special master's report shows also that Herbert R. Fitzmorris presents a claim of $100 for wages earned

291 F.—38

within three months preceding the bankrupt's petition, and that Joseph Cohen presents a similar claim for $37.50.

Under the Bankruptcy Act I do not find that the claim under the contract, or either of the claims for wages, is entitled to a priority of payment over the claim for administration of the estate, or of the common-law assignees, or of the claim for taxes. I shall therefore give no place to the above claims under the contract or for wages in my schedule of claims allowed.

### Taxes.

[4, 5] 4. Subsection "a" of section 64 of the Bankruptcy Act puts all taxes in one class, and in a class prior to all claims enumerated in section "b." I cannot sustain the contention of the United States that the United States has priority in the matter of taxes over the city of Portland. That section is distinct in putting all taxes upon an equality. For the reasons which I have given, I allow the claims for the administration of the estate to have priority over the taxes. I allow, also, the expenses of the common-law assignees in preserving the estate to have priority over the claims for taxes, they being found to be beneficial to the estate. After allowing priority to such claims—namely, for administration for the benefit of creditors and for the services and disbursements of the common-law assignees in preserving the estate—there will remain the sum of $4,468.30 to be divided between the tax claims. I have instructed the special master to divide this sum in proportion to the amounts of the claims of the United States, and of the city of Portland, with interest. He has made this division. The allowance for taxes appears in the schedule of amounts allowed, filed with this opinion.

Pay orders may be drawn in pursuance of this opinion.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes