### In re THOMPSON.

### In re MURRAY.

(Circuit Court of Appeals, Second Circuit. February 1, 1904.)

#### No. 60.

1. BANKRUPTCY—JURISDICTION OF COURT—PROCEEDING AGAINST ASSIGNEE.

A court of bankruptcy has jurisdiction to require an accounting from an assignee for creditors of a bankrupt, under an assignment which constituted an act of bankruptcy; and where he appears and submits his account, and enters upon a hearing without objection, the court does not lose jurisdiction to require him to turn over the property to the trustee because he asserts title to a part of such property in himself.

2. SAME—CHATTEL MORTGAGE—EXTINGUISHMENT OF LIEN.

Where a chattel mortgagee of a bankrupt, prior to his bankruptcy, but after he had made a general assignment, accepted a part of the mortgaged property in full satisfaction of his debt, his lien on the remainder is extinguished, and he cannot thereafter transfer it to one of the other creditors to the exclusion of others.

Petition to Review Order of the District Court of the United States for the Southern District of New York.

For opinion below, see 122 Fed. 174.

This is a petition by Herman R. Murray, individually and as assignee of William Thompson, the bankrupt above named, for a review of an order made herein by the District Court of the United States for the Southern District of New York, on the 27th day of March, 1903, modifying an order made herein by the referee in bankruptcy, dated February 20, 1903, affirming said order, as modified, and directing the petitioner to pay over to Isaac C. Wilson, trustee, the sum of $5,756.60, being the value of certain personal property alleged to have been wrongfully appropriated by the petitioner, as assignee in state insolvency proceedings of said William Thompson, bankrupt. The bankrupt,

a livery stable keeper in New York City, made a general assignment for the benefit of creditors to Herman R. Murray on November 27, 1900. On December 4, 1900, a petition in involuntary bankruptcy was filed against him. On December 26, 1900, an adjudication was made, and on February 26, 1901, Isaac C. Wilson was elected trustee. On March 4, 1901, the trustee procured an order from the district judge requiring that Murray forthwith deliver to the trustee all books, papers and documents in his possession relating to the estate, and that he present to the court an account of all moneys and properties received by him belonging to the bankrupt and thereupon deliver and pay over to the trustee such properties and moneys as the court should direct. Upon the return of the order the district judge referred the matter to the referee in charge and thereafter the parties appeared before the referee and Murray presented an account of receipts from book accounts and of disbursements. Proceedings were thereupon continued from time to time and resulted in the order as stated above.

At the date of the assignment there were upon the bankrupt's property certain chattel mortgages as follows:—

First:—A mortgage to Fiss, Doerr and Carroll on which there was due $400.

Second:—A mortgage to Hincks & Johnson, dated January 21, 1899, covering substantially all the property the bankrupt then had in the business, to secure the sum of $46,757, there being due thereon at the date of the assignment about the sum of $29,150.

Third:—A mortgage dated January 21, 1899, to Herman R. Murray to secure the sum of $4,625 covering 21 horses, 20 sets of harness and a motor car.

Murray was permitted to hold all the property covered by his own mortgage and the Fiss, Doerr and Carroll mortgage which he had purchased, but was not permitted to hold the property covered by the Hincks & Johnson mortgage, which was not taken by that firm.

Murray voluntarily appeared on the accounting and submitted to the jurisdiction of the court. The accounting proceeded to the end without objection. It is stated in the decision of the referee that the question of jurisdiction was raised on the argument, but it does not elsewhere appear in the record that the objection was taken at the hearing before the referee. The authority of the referee to make the order was challenged at the hearing before the district judge, but as the latter adopted the findings of the referee and entered an independent court order the authority of the referee to make the order is no longer in issue. His order was merged in and superseded by the subsequent order of the court.

In the petition to this court for review the objection is asserted for the first time that the District Court, sitting as a court of bankruptcy, was without jurisdiction to enter the order in question.

Other facts appear in the carefully prepared decision of the referee.

William J. Fanning, for petitioner.
Edward H. Wilson, for respondent.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. It is manifest that the court had jurisdiction to compel the assignee under the void state assignment to render an account. Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814. This proposition is not disputed. The petitioner, Murray, recognizing the authority of the court, appeared voluntarily before the referee, presented his account and gave testimony regarding it. Having once acquired jurisdiction of the proceeding the court did not lose it because the investigation took a wider range than the assignee expected or intended. His present contention, carried to its logical conclusion, is that the court acquired jurisdiction of those items which he chose to admit, but not of those which he chose to dispute, and that this jurisdiction was lost the moment he

asserted a claim of title in his individual capacity. If this contention were sustained an assignee for the benefit of creditors could, by the mere assertion of a colorable claim, paralyze the arm of the court of bankruptcy and defeat the intent and purpose of the law. It is asserted by the counsel for the trustee that since the amendments of 1903 the District Court has jurisdiction of any action or proceeding which the trustee may hereafter institute if the petitioner's present contention be upheld, and that a reversal of the order, while subjecting the parties to the expense and delay of retaking the testimony, will be absolutely inconsequential for the reason that the same result must inevitably be reached in the new proceeding. Whether this contention be well founded or not we do not decide, but the possibility that it may be furnishes an additional reason why a decision reached after such careful consideration should not be overthrown. The petitioner was accorded the fullest opportunity to establish his defense, every fact bearing upon the controversy is now before the court and even though the question were involved in greater doubt than it is it would seem to be the duty of the court to resolve it in favor of jurisdiction.

Upon the merits we are of the opinion that the conclusions of the referee, adopted and affirmed by the district judge, are correct. The assignment under the state law was itself an act of bankruptcy and was void. Murray got no title superior to the title of the trustee by virtue of such assignment. His right to hold the fund in controversy is founded solely upon an alleged gift, or transfer to him by the firm of Hincks & Johnson as mortgagees. Murray was a member of this firm, but the firm saw fit, acting through its senior partner, who had authority to bind the copartnership, to accept part of the mortgaged property in full satisfaction of the debt. After the assignment Hincks & Johnson took, under their mortgage, between 50 and 60 carriages and they were sent by the assignee to the factory of the firm at Bridgeport, Conn. The firm waived all claim to the other property, horses, harness, etc., covered by the mortgage. Of this there can be no doubt. Mr. Hincks testified:

"I do not know what became of the property other than the carriages. We had nothing to do with it at all. I told Mr. Murray that I didn't care to bother with horses or property of that kind, and the assignee took it. The firm of Hincks & Johnson made no claim to 119 horses that were covered by this chattel mortgage. We had nothing to do with the horses or other property, except the carriages. I don't know what became of those horses. I suppose they were sold by the assignee. We waive all claim to all of that property. We never claimed to take that property, we never had any property except the carriages at any time. With reference to the horses and all the other property that appears in the mortgage we waive all claim, they haven't come into our possession at all, and we don't assert any claim and we never shall. Don't understand me as waiving any rights of Mr. Murray. I am speaking now for myself and Mr. Johnson. I don't know that I ought to speak for Mr. Murray; but as an entity the firm of Hincks & Johnson, those don't enter into his assets at all. They are waived by that firm."

Subsequently Mr. Hincks was recalled and attempted to explain this positive testimony of an unqualified release, reiterated again and again, by the assertion that he meant to testify that he told Murray "that if he would turn over the carriages to us without expense that

128 F.—37

he was welcome to whatever rights we had in the miscellaneous property, horses, carriages, etc. That he might apply that property towards satisfying any deficiency on his mortgage." The District Court was at liberty to reject this explanation as an afterthought and as incompatible with the previous testimony of the witness, but assuming it to be true it does not justify the course of the petitioner in applying the property in payment of his individual mortgage. Hincks & Johnson, the mortgagees, made no claim to the mortgaged property other than the carriages. These they accepted in full satisfaction of their claim. In legal contemplation it was as if they had received a sum of money in full payment of the mortgage. When their mortgage was satisfied the property covered by it ceased to be theirs or under their control. It did not pass to other mortgagees, whose mortgages did not include it, but to the assignee to be divided among the creditors and, in case of bankruptcy, to the trustee. Hincks & Johnson might have had the property sold and the proceeds applied on their debt; they might even have transferred it to Murray, as a member of the firm, to dispose of for their benefit, but this they did not do. After the firm debt was extinguished they attempted to exercise dominion and control over the property and transfer it to one of the bankrupt's creditors to the exclusion of all the rest. Hincks & Johnson unquestionably had the right to make their debt good out of the mortgage property, but when this had been done the firm's interest ceased and the property under the provisions of the bankruptcy act, passed to the trustee for the benefit of all the creditors.

The order is affirmed with costs.