## In re MUNCIE PULP CO.

### (Circuit Court of Appeals, Second Circuit.   June 10, 1905.)

### No. 237.

1. BANKRUPTCY—RECOVERY OF ASSETS—CORPORATIONS.

Where a bankrupt corporation had organized another corporation to develop oil and gas wells to furnish the bankrupt corporation with fuel to operate its business, and the officers of the bankrupt owned all the stock of the oil company, and used it as a mere agent of the bankrupt, and not as engaged in a separate business, they were properly required to surrender the capital stock thereof to the bankrupt's receiver.

2. SAME—RIGHTS OF RECEIVERS.

The receiver of a bankrupt corporation after adjudication was entitled to maintain summary proceedings to recover such stock for the preservation of the bankrupt's estate.

Petition for Revision of Proceedings of the District Court of the United States for the Southern District of New York.

On petition to review an order in bankruptcy, made by the District Court for the Southern District of New York, and entered December 30, 1904, directing the petitioner, The Great Western Natural Gas & Oil Company, to deliver all its assets and property to Leo Oppenheimer, as receiver of the Muncie Pulp Company, and further directing the petitioners, Henry Blackman and Gustav L. Jaeger, to transfer to the receiver all of the capital stock of the said Great Western Company standing in their names, respectively.

Wm. Jno. Barr, for petitioners.

Abram I. Elkus, for receiver.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge.   The Muncie Pulp Company is a New York corporation engaged in manufacturing pulp at Muncie, Ind., Henry Blackman being its president and Gustav L. Jaeger its treasurer.   The stock is owned by these two men, Blackman being the majority stockholder.   In order to supply a cheap motive power for the operation of its plant the pulp company purchased and leased various natural gas and oil wells and lands upon which natural gas and oil wells were drilled.   The pulp company finding difficulty in acquiring rights of way from its plant to these wells, a new and independent company, known as the Buck Creek Natural Gas Company, was organized under the laws of Indiana "to furnish the Muncie Pulp Company with gas or oil."   For technical reasons a new company, known as the Great Western Natural Gas & Oil Company, was organized to take the place of the Buck Creek Company. Blackman is the president and majority stockholder, holding 53 per cent., in the Great Western Company, Jaeger is the treasurer and minority stockholder, holding 47 per cent. of the stock.   To the Great Western Company was transferred the gas and oil well property formerly owned by the Muncie Pulp Company and by it transferred to the Buck Creek Company.   The Muncie Pulp Company made various expenditures of its own money for the benefit of

the Great Western Company, treating the latter merely as an agent which the law made necessary for the full development of its business. The Great Western Company kept no separate set of books, its entire administrative department being under the control of the Muncie Company. The record fails to show that there are any creditors of the Great Western Company. A petition in involuntary bankruptcy was filed August 3, 1904, against the Muncie Pulp Company, and on the 16th of December, 1904, an order adjudicating the said company a bankrupt was duly entered. On or about August 3, 1904, a receiver of the pulp company was appointed who, on December 2, 1904, presented a petition to the District Court praying that the Great Western Company turn over to him the above-described property. On this petition an order to show cause was granted and after hearing the parties the court, on December 23, 1904, granted the prayer of the petition indorsing on the papers the following memorandum:

"The proof shows, in my opinion, that Buck Creek Company and the Great Western Company were merely agents of the Muncie Company to hold property for it; that the assets held by the Great Western Company are assets of the Muncie Company. That the stock of the Great Western Company held by Blackman and Jaeger belongs to the Muncie Company and is held by them as trustees for it. Motion granted. Settle order on notice."

The petitioners maintain that the order entered upon this decision was beyond the jurisdiction of the District Court; that they hold the property which they are thus directed to turn over in their own proper right, owning, holding and claiming to own and hold the same adversely to the Muncie Pulp Company and to the receiver of said company, and that the said order is unlawful and violates the constitutional rights of the petitioners in that it takes away their property summarily without trial and without due process of law.

The principal question presented is one of fact; this being determined, there is little difficulty about the law. Indeed, we understood the counsel for the petitioners to concede at the argument that if the Great Western Company were merely the agent of the pulp company the property held by it could be reached by summary proceeding and without the commencement of a plenary suit.

Frank L. Norris, who was secretary of the pulp company until 1903, briefly and clearly states the situation as follows:

"Henry Blackman was at all times, while I was secretary of the Muncie Pulp Company, president thereof, and Gustav L. Jaeger the treasurer of the Muncie Pulp Company. These gentlemen held the same offices in the Great Western Natural Gas & Oil Company. The Great Western Natural Gas & Oil Company at no time paid to the Muncie Pulp Company any consideration whatsoever for the transfer to it of the various properties owned by it, and its only assets are assets acquired from the Muncie Pulp Company. The stock of the Great Western Natural Gas & Oil Company was issued in part to Mr. Blackman and in part to Mr. Jaeger, and one share was given to the secretary of the Great Western Natural Gas & Oil Company for the purpose of having a resident director in Indiana. All this stock was, however, actually owned by the Muncie Pulp Company, and it was placed in the names of these persons simply as a matter of legal form and convenience, and Mr. Jaeger and Mr. Blackman so informed me. Neither Mr. Blackman nor Mr.

Jaeger paid any value for the stock of the Great Western Natural Gas & Oil company; on the contrary, the assets of the Great Western Natural Gas & Oil Company came solely from the Muncie Pulp Company."

That this testimony fairly and accurately states the facts there can be no doubt and, if we exclude fictitious entries purporting to be made in January, but actually made in May, prior to the filing of the petition in bankruptcy, there is nothing in the record opposed to it but assertion, theory and speculation. These entries were made by an unwilling bookkeeper on compulsion from the president of the pulp company and instead of strengthening tend to weaken the petitioners' position.

The Great Western Company was undoubtedly a mere creature of the pulp company, having no independent business existence and organized solely for the purpose of facilitating the business of the latter. The Great Western Company has no shadow of claim to the property in controversy, and to permit it, or its president, or shareholders, to dispose of such property, is to sanction a fraud upon the creditors of the pulp company. We deem it of no importance that the transfer passed through the Buck Creek Company, rather than directly from the pulp company. The new oil company was the old company under another name. In legal effect it was as if the pulp company had, for convenience in transacting business, transferred its oil lands, in trust, to an individual agent and, upon his becoming incapacitated, to a second agent for a like purpose. Can there be a serious doubt that the court would peremptorily reject a claim that these agents, or either of them, had acquired a title adverse to their principal? Having determined that the transaction was a mere transfer to the pulp company's agent it is unnecessary to determine what it was not; it surely was not an absolute conveyance for a valuable consideration and it was not a gift. If the petitioners succeed in their contention the result will be that, upon liquidation, there being no creditors of the Great Western Company, the valuable property transferred to it will be divided among its shareholders, namely Blackman and Jaeger—the president and treasurer of the pulp company and the men who, of all others, should be most solicitous to protect the company and its creditors from such spoliation. As Jaeger has disclaimed the right to share in property acquired by such means it is probable that Blackman, to the extent of his interest, would be the sole beneficiary.

The facts being so plain an extended discussion of the law seems unnecessary. Surely the bankrupt law is not so vitally defective that the court cannot direct the president of a bankrupt corporation to turn over property of the bankrupt in his hands or under his control.

In Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, the Supreme Court held that an order similar to the one in dispute might be made, before the appointment of a trustee, by the District Court to reach property of the bankrupt in the hands of a third person.

In Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, the court, at page 15 of 184 U. S., page 275 of 22 Sup. Ct. (46 L. Ed. 405), says:

"But suppose that respondent had asserted that he had the right to possession by reason of a claim adverse to the bankrupt, the bankruptcy court had the power to ascertain whether any basis for such a claim actually existed at the time of filing of the petition. The court would have been bound to enter upon that inquiry, and in so doing would have undoubtedly acted within its jurisdiction."

In Re Thompson, 128 Fed. 575, 63 C. C. A. 217, this court held that a court of bankruptcy has jurisdiction to require an accounting from an assignee who has taken the property under a state assignment, and, where he appears and submits his account, the court can require him to turn over the property even though he asserts title to a part of it in his individual capacity.

In Re Tune (D. C.) 8 Am. Bankr. R. 285, 115 Fed. 906, the court says, at page 296 of 8 Am. Bankr. R., and page 914 of 115 Fed.:

"When a trustee claims property to which another sets up title, and asks the assistance of the court of bankruptcy, the court, to use the language of Nugent's Case, 'is bound to enter upon that inquiry.' If, as the Supreme Court says, 'it is bound to enter upon that inquiry,' and 'in doing so undoubtedly acted within its jurisdiction,' is not the court, if it finds the claim merely colorable, bound to direct the surrender of the property to the trustee? * * * If the facts in the particular case show that the detention is without color of right, then it is bound to take and administer the property."

See, also, Matter of Andre, 13 Am. Bankr. R. 132, 135 Fed. 736, and cases cited.

The proposition that the proceeding in no event could be brought by a receiver cannot be sustained. The order complained of was entered after adjudication and a trustee has in all probability been appointed who could without doubt renew the application and maintain it if the present proceeding should fail for the reason stated. The question then is, in a sense, academic but we do not rest the decision on this ground as we are convinced that upon the facts as found by the District Court the order was necessary for the preservation of the estate.

The court had jurisdiction to order the property of the bankrupt, in the possession of a bailee or agent, delivered into the custody of the receiver pending the appointment of a trustee.

Order affirmed.