---

### In re KARP.

(District Court, D. Massachusetts. July 12, 1915.)

#### No. 19027.

1. BANKRUPTCY ⬥288—COMMON-LAW ASSIGNEE—ACCOUNT—SUMMARY PROCEEDINGS.

Where a common-law assignee carried on the business of a bankrupt for several days after the petition was filed, and then closed out the business by selling all of the assets, and paid over to the trustee the amount claimed by him to be due after deducting payments made after the institution of the bankruptcy proceedings, the bankruptcy court had power to settle his account with the trustee in summary proceedings, as a common-law assignee is to be regarded as an adverse claimant, and not amenable to summary process, only as to payments or dispositions of property made by him in good faith before the institution of the bankruptcy proceedings and as to liens in his favor which accrued prior to that time.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. ⬥288.]

2. BANKRUPTCY ⬥186—COMMON-LAW ASSIGNEE—INTERFERENCE WITH PROPERTY—LIABILITY.

After the filing of a petition in bankruptcy, a common-law assignee acts at his peril in carrying on the bankrupt's business, selling it out, and winding it up, or in doing anything beyond what is necessary to preserve the property in his hands when the petition is filed, as Bankr. Act July 1, 1898, c. 541, 30 Stat. 544, gives creditors the right to have the assignment superseded and set aside, and the filing of the petition is notice that the petitioning creditors object to the assignment and oppose liquidation of the bankrupt's affairs thereunder.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 285, 319; Dec. Dig. ⬥186.]

3. BANKRUPTCY ⬥186, 303—COMMON-LAW ASSIGNMENT—VALIDITY OF ASSIGNEE'S ACTS.

Common-law assignments are not outlawed by the Bankruptcy Act, and where creditors allow the assignee to continue in possession and operate the business, the assignee is not necessarily to be charged with a resulting loss, whether occurring before or after the filing of the petition in bankruptcy. The burden is upon a bankrupt's assignee to satisfy the

bankruptcy court that in carrying on the business after the institution of bankruptcy proceedings he acted in good faith and with sound business judgment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 285, 319, 458–462; Dec. Dig. ☞186, 303.]

4. BANKRUPTCY ☞186—COMMON-LAW ASSIGNEE'S LIABILITY FOR LOSSES FROM CARRYING ON BUSINESS.

A bankrupt's assignee was liable for a loss incurred by him in carrying on the bankrupt's business, where there was no finding that it was good judgment on his part to continue the business, and he did not show what part of the loss was incurred before and what part after the filing of the petition in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 285, 319; Dec. Dig. ☞186.]

In Bankruptcy. In the matter of Abraham Karp, bankrupt. On review of an order of the referee. Affirmed.

Arthur E. Burr, of Boston, Mass., for trustee.
Carl Gerstein, of Boston, Mass., for assignee.

MORTON, District Judge. This is a summary proceeding, commenced by a petition by the trustee in bankruptcy of A. Karp, praying that Charles Porter, who had been common-law assignee of Karp, "be directed to turn over forthwith to said trustee all the property, or the value thereof, which came into the possession of said Porter by virtue of said assignment." The matter was heard by Mr. Referee Warner, who made an order that Porter pay over forthwith to the trustee the sum of $467.50. The case is here on the certificate of the referee on a petition for review. The evidence is not reported. The findings of fact by the referee must therefore stand, unless they appear from his certificate to be erroneous. At the beginning of the proceedings Porter objected that this court had no jurisdiction of the matter on summary proceedings, and has never waived or abandoned that objection.

[1] The bankrupt carried on a banking business. He made a common-law assignment to Porter on January 6, 1913, under which Porter took possession the next day. On January 11th the involuntary petition in bankruptcy was filed, upon which adjudication has been made. Porter carried on the business under the assignment to him till January 17th, when he closed it out by selling all the assets. He "acted in good faith and under advice of counsel." He paid over to the trustee $218.50, which he contends is all that was due.

It is not clear on what basis the account was stated by the assignee before the referee. Apparently the debit side of it was made up of an itemized schedule of the property received, with no values given, and the sums collected by him from the operation of the business; and the credit side was made up of sums paid for running the business, of various disbursements to himself, his counsel, and other persons in connection with the sale of the assets and the liquidation of the business, of accounts receivable resulting from his operation of the business, of claims on certain scheduled property said to belong to Karp,

and to have been withheld or taken away by the present holders thereof, and of a reservation of cash to protect himself against a suit brought against him on account of the Karp business. Porter apparently took over no cash from the bankrupt, and had run the business only four days before the bankruptcy petition was filed. I infer that all the payments in controversy were made after the institution of the bankruptcy proceedings.

Upon these facts, I am of opinion that the bankruptcy court had power to settle Porter's account with the trustee in summary proceedings. To hold that a common-law assignee, who, with notice of pending bankruptcy proceedings against his assignor, goes ahead and operates, and finally liquidates, the bankrupt's business and property, can only be made to account to the trustee by plenary proceedings, perhaps in a state court, would introduce such delay, expense, and lack of uniformity in the settlement of bankrupt estates that such a ruling ought not to be made, unless required by decisions binding on this court. According to what seems to be established law, a common-law assignee is to be regarded as an adverse claimant (and therefore not amenable to summary process) only as to payments or dispositions of property made by him in good faith, before the institution of the bankruptcy proceedings, and as to liens in his favor which accrued prior to that time. Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, 5 Am. Bankr. Rep. 623; Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413, 7 Am. Bankr. Rep. 421; Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165, 10 Am. Bankr. Rep. 1; Re Chase, 124 Fed. 753, 59 C. C. A. 629 (C. C. A. 1st Circuit); Re Thompson, 128 Fed. 575, 63 C. C. A. 217, 11 Am. Bankr. Rep. 719 (C. C. A. 2d Circuit); Remington on Bankruptcy (2d Ed.) §§ 1611, 1612. It does not appear that any of the matters here in controversy are of those sorts.

The items of the account in dispute are as follows:

(1) Alleged overpayment to attorney for assignee.....................$105.00
(2) Goods received by assignee and unaccounted for by him......... 293.50
(3) Amount reserved by assignee for Silbert claim................... 69.00

$467.50

[2] As to the first of these items: The assignee paid his attorney $205. The referee has found that this was $105 more than a proper charge for the services rendered, and has charged the assignee with the overpayment. There are no facts before me as to the nature and extent of the legal services, or the occasion for them. The referee's findings cannot, therefore, be revised, and must be confirmed.

As to items 2 and 3: In operating the business the assignee paid out $629.53; he took in from sales made by him (and perhaps also from accounts receivable of the bankrupt) $635.83; and he has uncollected book accounts for goods sold by him on credit amounting to $109.73. The learned referee, in stating the account, apparently disregarded altogether Porter's operation of the business, found that he had not accounted for $293.50 worth of goods that he took over, and thereupon charged him with that difference. The uncollected book accounts are

left to Porter, and a bill of $69 for flour, on which he has been sued by a third party (Silbert), who claims to have sold him flour for use in the Karp business, is also disregarded. The apparent excess of cash taken in over that paid out, amounting to $6.30, is also left with the assignee.

The assignee's explanation was, as I understand the facts stated on the second page of the certificate, that this $293.50 represented, as to $116.03, cash and book accounts resulting from his operation of the business, and as to the balance, $177.47, an operating loss during the eleven days; in other words, that he obtained the gross cash and credit intake of the business above stated by the expenditures which have been scheduled and allowed, plus $293.50 worth of flour received by him from Karp, which was used up in carrying on the business.

[3] The filing of the petition was notice that the petitioning creditors objected to the common-law assignment and opposed liquidation of the bankrupt's affairs under it. The Bankruptcy Act gave them the right to have the assignment superseded and set aside. Re Slomka, 122 Fed. 630, 58 C. C. A. 322 (C. C. A. 2d Circuit). Under such circumstances, I think that the assignee must be held to have acted at his peril in carrying on the bankrupt's business, and eventually selling it out and winding it up (see Bryan v. Bernheimer, ubi supra), and in doing anything beyond what was necessary to preserve the property which was in his hands when the petition was filed (Re Hays, 181 Fed. 674, 104 C. C. A. 656, 24 Am. Bankr. Rep. 691 [C. C. A. 6th Circuit]). More than that can be safely done after the bankruptcy proceedings are instituted only by a receiver acting under the authority of the bankruptcy court.

[4] As the cases above cited show, however, common-law assignments are by no means outlawed by the Bankruptcy Act. They are generally made with the object of holding a debtor's business together pending an effort to settle his affairs without bankruptcy; they usually authorize and contemplate a continuance of the business while the effort is being made. Where the creditors allow the assignee to continue in possession of the property and to operate the business, he is not necessarily to be charged with a resulting loss, whether occurring before or after the filing of the petition in bankruptcy. As the assignment under which he acts is voidable, the burden is certainly upon him to satisfy the court that he acted, after the institution of the bankruptcy proceedings, not only in good faith, but with sound business judgment under the circumstances; in other words, that the court, if seasonably applied to, would have authorized him to do what he did. Bryan v. Bernheimer, ubi supra. It may well be that the assignee has greater freedom of action and is held to a less strict accountability as to his conduct before the bankruptcy petition is filed, both because until that is done he cannot be sure the assignment will be set aside and is forced to act on his own responsibility, and also because the filing of the petition gives certain inchoate rights over the respondent's property, which become fixed by the adjudication. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405.

If the assignee desires to raise this point, however, it devolves upon

228 F.—51

him to divide his account and present it in such shape as to show the necessary facts. That was not done in this case. The accounts submitted by the assignee do not show what part of the flour was used, or what part of the accounts receivable was obtained, prior to the filing of the bankruptcy petition. There is no way of telling how much of the alleged loss was incurred before that time, and how much afterwards. Nor is there any finding by the referee that it was good judgment on the part of the assignee to continue the business as he did. Without these facts, and without such a finding, the loss resulting from the operation of the business after the filing of the petition in bankruptcy certainly ought not to be allowed; and it does not appear that the whole loss was not of that character.

Upon the record before me, no error appears to have been made by the learned referee, and his order must be affirmed.