### In re MORRIS & RICE.

(District Court, D. Massachusetts. July 2, 1919.)

#### No. 24442.

1. BANKRUPTCY ⬦186(1)—COSTS OF ADMINISTRATION—ALLOWANCE TO GENERAL ASSIGNEE.

The rule that a general assignee will be allowed from the estate in bankruptcy for such expenses as were reasonably incurred in the care and preservation of the property will be strictly applied as to expenditures made after the bankruptcy.

2. BANKRUPTCY ⬦186(1)—CLAIMS AGAINST TRUSTEE—EXPENSES OF ASSIGNEE.

An assignee of a mercantile firm held entitled to reimbursement from its estate in bankruptcy for money paid employés in continuing the business until the appointment of a receiver in bankruptcy, except so much as was paid to the bankrupts for their personal services.

3. BANKRUPTCY ⬦186(1)—CLAIMS AGAINST TRUSTEE—EXPENSES OF ASSIGNEE.

An assignee of a mercantile firm held entitled to allowance of his claim for rent paid, although after filing of petition in bankruptcy, where the receiver succeeding continued to occupy the premises.

4. BANKRUPTCY ⬦378—REJECTION OF OFFER OF COMPOSITION—RIGHT TO DEPOSIT.

Money obtained by bankrupts after filing of petition against them and deposited with an offer of composition does not belong to the estate, and

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

if the offer was made in good faith, although rejected for insufficiency, should not be retained because the continuance of the business pending disposition of the offer resulted in loss to the creditors.

In Bankruptcy. In the matter of Morris & Rice, bankrupts. On petitions for review of various orders of referee.

See, also, 246 Fed. 1021.

Jacobs & Jacobs, of Boston, for petitioners.
Swift, Friedman & Atherton, of Boston, Mass., for bankrupts.

MORTON, District Judge. The various petitions for review in this case bring up: (1) Certain questions concerning the proper settlement of the account between the common-law assignee and the trustee in bankruptcy; (2) the proper compensation to be allowed to the assignee; and (3) whether money deposited by the bankrupts under an offer of composition which was not confirmed should be returned to them. The facts are stated in the certificates of the learned referee. While the evidence on which he acted is reported, the facts on which the decision turns are for the most part not in dispute.

Morris & Rice carried on a retail shop in Lawrence, selling shoes and clothing. On December 23, 1916, their shop was attached on mesne process, and a keeper was placed in charge. Prior to that, however, the bankrupts had realized that they were in financial difficulty, and under the advice of their counsel had turned over their receipts to him, so that he had in his possession on the date of the attachment about $2,000. After the attachment and on the same date the bankrupts made a common-law assignment for creditors to Hayes. The attaching creditor refused to relinquish possession to Hayes, and the latter received nothing except the cash in the hands of the attorney, less $310, deducted by the attorney for his own services and disbursements. On December 28th an involuntary petition in bankruptcy was filed on which adjudication later took place. On January 2, 1917, a receiver was appointed by the bankruptcy court. Adjudication was postponed, and on January 30, 1917, the bankrupts made an offer in composition, which, after some delay, was on April 23d disallowed after hearing, upon the ground that it was inadequate. The offer required a deposit of $4,226.20, of which the receiver deposited $3,500 and each bankrupt $363.10. The referee finds that the composition proceedings and the delay in connection with them caused substantial loss to the creditors.

[1] The assignee did not turn over to the receiver the fund in his possession until March 2, 1917. He then turned over $1,759.75, having deducted $644.40 for expenses incurred by him. He has filed a petition for compensation as assignee. The learned referee disallowed all these payments except $83.24, and directed the assignee to turn over to the trustee $561.16 more. The referee allowed the assignee as compensation for services $75.

The principles by which the account is to be settled are well established. The common-law assignee will be allowed for such expenses as were reasonably incurred in the care and preservation of the

property, and therefore inured to the benefit of the bankrupt estate. Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165; In re Chase, 124 Fed. 753, 59 C. C. A. 629 (C. C. A. 1st Cir.). Before the petition in bankruptcy is filed the rule will be leniently applied, and the assignee will be given the benefit of any fair doubt so long as he keeps within the powers conferred upon him in the instrument of assignment. But after bankruptcy proceedings have been instituted, there is no reason why the rule should not be strictly applied and the assignee be compelled to establish that the payments with which he seeks to be credited did in fact benefit the estate. In re Karp (D. C. Mass.) 228 Fed. 798.

As to the assignee's compensation: As the learned referee points out, the assignee never, strictly speaking, had possession of the goods in the store. He had no responsibility of any kind for its operation, except during the period from December 23d to January 4th, when the receiver took possession. I agree with the learned referee's views on this matter; and his report is confirmed.

. As to the charges in the assignee's account: The principal items in dispute are disbursements for pay roll and for rent. The assignment was made on the Saturday before Christmas. One of the bankrupts borrowed $178 to pay the pay roll for that week. This was done on the assurance of the assignee that he would repay the money; and he did so on January 6th. Of this $178, $60 went to the two bankrupts for services in the store during the week. The assignee also paid the pay roll of $130 for the next week ending December 30th, of which $60 went to the bankrupts, and he paid $60 on account of the pay roll for the week ending January 6th, during which (on January 4th) the receiver took charge. The receiver continued to operate the store at the same rental for several months, until after the failure of the offer in composition and the appointment of the trustee, by whom the business was wound up.

All the payments for wages above referred to were disallowed by the learned referee upon the ground that they had added nothing to the value of the estate and were not necessary for its preservation. During the interval between December 23 and January 4, 1917, the attaching creditor was taking the proceeds of sales, and the assignee was paying the expenses; but of course such proceeds, less the legal charges, eventually came to the trustee.

The wages due to employés (other than the bankrupts) up to the time when bankruptcy proceedings were instituted would have been entitled to priority. The assignee was justified in paying them up to and including December 28th. I think also that he was fairly justified in keeping things in statu quo for a few days longer, and that for the sums paid as wages to employés up to the qualification of the receiver he should be credited. The learned referee was of opinion that as the operation of the business pending the offer in composition resulted in a loss of assets, such payments did not preserve or enhance the estate. Strictly speaking, that is true. But the assignee could not foresee, and is not responsible for, the delay and the losses incident to continued operation of the store by the receiver. Judging his

action by the facts then apparent, it seems to me he acted reasonably in keeping the business going.

[2] But I do not approve of his hiring as his employés the bankrupts who had conveyed to him as common-law assignee. If such a practice is to be approved, it must be on a much stronger showing of necessity or advantage in doing so than was made out in this instance. I agree with the learned referee in disallowing the items paid to the bankrupts under the guise of wages.

[3] As to the rent: The month's rent of $225 became due on December 31st, three days after the bankruptcy petition had been filed. The assignee paid it under a threat of immediate eviction by the landlord. It was not necessary for him to do so, because the holding appears to have been under a written lease, and the receiver was entitled to a reasonable time in which to decide whether to affirm or disaffirm the lease. Gardner, Trustee, v. Gleason, 259 Fed. 755, —— C. C. A. —— (C. C. A. 1st Cir.) June 18, 1919. Eviction pending the application for the appointment of a receiver, and with nobody to represent the creditors, would hardly have been permitted. The receiver, after he came into control, continued to hire the same shop, and, so far as appears, at the same rent. In Re Hays, 181 Fed. 674, 104 C. C. A. 656 (C. C. A. 6th Cir.), it was held that—

"The assignee may not improperly be treated (with respect to the settlement of his accounts) as a quasi receiver during the pendency of the proceedings for adjudication in bankruptcy."

Applying this principle to the present case, the assignee ought to be allowed his payment for rent.

The two trips taken by the assignee to New York had nothing to do with the preservation or care of the estate. The referee properly disallowed that item. This disposes of the questions concerning the assignee's account and his petition for services.

[4] The remaining question relates to the petitions of the bankrupts for the return to them of the sums deposited by them with the clerk under the offer in composition. The offer was pending for about three months before it was finally disallowed as insufficient and not for the best interests of the creditors. During this interval the shop was run by the receiver, and nothing substantial was done in the way of liquidation; and the assets were, as the learned referee finds, diminished by an amount greater than said deposits by the bankrupts. The learned referee held that as the stay in liquidation was at the request of the bankrupts and on account of their insufficient offer, they were chargeable with the resulting loss. He accordingly denied the petitions.

The certificate and report do not state that the money deposited belonged to the bankrupts at the time when the petition against them was filed, or was the proceeds of property then belonging to them. It is said by their counsel that it was not; that the money was borrowed by them for the purpose of composition after the filing of the petition; and I assume that to be the fact. Nor is there any finding that the composition was offered in bad faith, or for the purpose of delay, or

that the final disposition of it was delayed either intentionally or negligently by the bankrupts.

Property acquired by a bankrupt after the filing of an involuntary petition against him on which he is later adjudicated does not pass to the trustee. Collier on Bankruptcy (11th Ed.) p. 1116; Remington on Bankruptcy (2d Ed.) § 1132 et seq. The deposits in question do not belong to the trustee; and he is not entitled to them unless the bankrupts are chargeable with the loss to creditors caused by the offer in composition.

There is no statutory authority for such a charge, unless it be found in Bankruptcy Act July 1, 1898, c. 541, § 12b, 30 Stat. 549 (Comp. St. § 9596), which provides that the bankrupts shall deposit "the money necessary to pay * * * the cost of proceedings." The deposit is to be "subject to the order of the judge." "Costs" have generally been understood to be the statutory fees, and such other expenses as have been incurred in the case, e. g., master's fees. They do not include a loss to creditors caused by delay in converting the assets into cash. Nor do I think that without statutory authority there is power to put such loss upon the bankrupt personally and charge it against property of his, not affected by the bankruptcy, which happens to be within the control of the court, unless he acts in bad faith towards his creditors. Offers in composition are expressly authorized by the act; and, speaking generally, loss due to delay necessarily incident to legal proceedings is damnum absque injuria. If to retain the property pending the offer threatens loss to creditors, they can move for an order directing the receiver to sell out at once unless the bankrupt furnishes security for their protection. No such steps were taken in this case. In the Wiener Case (D. C.) 215 Fed. 278, and (D. C.) 217 Fed. 173, relied on by the trustee, the bankrupt was permitted to withdraw his offer; and in the Miller Case (D. C.) 243 Fed. 242, 40 Am. Bankr. Rep. 155, the practice is said to be to require security from the bankrupt as above suggested.

While the making of an insufficient offer, coupled with intentional or unnecessary delay in pressing it, was evidence of bad faith on the part of the bankrupts, there is no finding of bad faith or intentional delay by them. The findings in the certificate are not attacked by the trustee. Upon them I am of opinion that the bankrupts were entitled to a return of the deposits.

Ordered accordingly.