HARRIET C. WAGNER, EXECUTRIX, AND ROBERT B. WAGNER, EXECUTOR, ESTATE OF HARRY M. WAGNER, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8489. Promulgated March 9, 1928.

*B. R. Youngman, Esq.*, and *Barry Mohun, Esq.*, for the petitioners. *John D. Foley, Esq.*, for the respondent.

OPINION.

LITTLETON: With respect to the first issue presented, the petitioners take the position that at least 50 per cent of the total expenses incurred by their decedent in maintaining and operating an automobile, in each of the years in question, was a proper deduction from gross income as a business expense for the year in which incurred and paid.

That portion of the expenses incurred by decedent in maintaining and operating his automobile during the years in question which was properly chargeable against its use by decedent in going to and from his home and office, and in other personal and family use, was not an ordinary and necessary business expense and, consequently, not deductible. *Frank H. Sullivan*, 1 B. T. A. 93; *Chas. H. Sacks*, 6 B. T. A. 68. The evidence as to the extent to which the automobile was used during the years 1919, 1920, and 1921, by decedent strictly in connection with his business is not sufficient to enable the Board to determine what portion of the total expense incurred in the years in question should be allocated to decedent's business. We, therefore, approve the Commissioner's determination in regard thereto.

The second issue presented is whether the petitioners are required to return as income of their decedent for the year 1920, the amount of $30,000 representing part of the profit realized from short sales in sugar and which amount decedent allocated to the Washington corporation, H. M. Wagner Co., Inc. The petitioners contend that this amount of the profits, in fact and in law, belonged to the Washington corporation and that the decedent received it as an agent or trustee for its benefit. The Commissioner, on the other hand, contends that the short sales in sugar were purely personal speculations of the decedent and that the profits realized therefrom inured to him as an individual and must be reported in his return.

At the outset, it should be observed that we have no evidence in the nature of an express contract which would require H. M. Wagner to turn over any part of these profits to the corporation or to hold

the corporation liable for any losses which H. M. Wagner might have suffered in the venture. Petitioners rely on the relations and prior dealings of the parties, and contend that, since H. M. Wagner was making purchases for the corporation as sole stockholder, these acts were for the protection of the corporation as well as the individual business and, therefore, the benefit which resulted therefrom should accrue to the benefit of the corporation as well as to H. M. Wagner, individually. Our difficulty lies in determining the extent to which H. M. Wagner's acts were binding on the corporation in the sense of an agent acting for a principal. Beyond the fact that H. M. Wagner was the sole owner of the Baltimore unincorporated business, the owner of the entire stock of the Washington corporation and the fact that he had been making purchases for both businesses, we are without evidence as to the extent of the authority given to him in connection with these transactions.

From the mere fact that H. M. Wagner owned all the stock of the Washington corporation and was making purchases for this corporation, can we conclude that he was acting for the corporation when he made short sales in his own name on a commodity exchange upon a realization that the purchases which he had made would prove detrimental? We are of the opinion after a careful consideration of the evidence that we can not so conclude. Certainly no express agreement to this effect is shown or contended for and the prior dealings of the parties do not tend to prove such a fact. Prior to 1920, H. M. Wagner had been accustomed to buying and selling on the New York Coffee and Sugar Exchange in his own name, and in these dealings no part of the profits and losses resulting therefrom was allocated to the Washington corporation. Apparently, these dealings were carried on in his individual capacity in a manner not uncommon to business men who engage in such speculative ventures, and in a similar manner to the transactions in 1920 which we are asked to consider as having been done by the Washington corporation. Of course, as owner of the stock of the Washington corporation, losses or gains of this corporation would indirectly result to the detriment or profit of H. M. Wagner, and, therefore, H. M. Wagner was interested in the success of the corporation. We can not, however, overlook the fact that the corporation was an entity separate and apart from H. M. Wagner, and that a sole stockholder of a corporation may engage in business on his own behalf which would be as distinct and separate from that of the corporation as if conducted by two separate individuals. Apparently, this was the situation as far as H. M. Wagner's dealings on the commodity exchange were concerned.

The argument advanced by the petitioners that because of the contractual arrangement between H. M. Wagner and Bohannon, the manager of the Washington corporation, with respect to salary based on profits, the latter could have forced the former to have the corporation's share of the profits on the short sales in question allocated to the corporation, assumes an unproven material fact, namely, ownership of these profits. Admittedly, if they belonged to the corporation when earned and H. M. Wagner was merely the intermediary or conduit through which they flowed to the corporation, such profits would be taxable to the corporation and Bohannon could have forced such an allocation in order to determine the amount of his salary under the contract, but the evidence does not establish these facts. The evidence establishes that Bohannon had a contract under which he was entitled to receive a salary based upon the profits of the corporation and that profits were made on the short sales in question, but it does not show that any part of such profits belonged to the corporation or that Bohannon could have forced H. M. Wagner to make an allocation in order to determine the amount of Bohannon's salary. From the facts before us, we could equally well say that if losses had resulted on the short sale venture, the corporation would have been responsible for its share of such losses, but certainly, we have no evidence before us which would lead us to conclude that such a liability would have arisen in the contingency assumed.

The Board is, accordingly, of the opinion that, on the evidence presented, it has not been shown that the respondent was in error in considering the entire profits from the short sales in question as income of H. M. Wagner, and, therefore, his action is sustained.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

LOVE, dissenting: I can not agree with the decision reached in this case. It is true that as a matter of law we are dealing with two separate and distinct entities, one individual, and the other corporate.

Under ordinary conditions those separate entities should be dealt with as separate entities, but every court in the land, including the United States Supreme Court, has justified and endorsed the procedure, in dealing with tax cases under peculiar conditions, of disregarding the corporate entities, and looking through the insubstantial and transparent partition veil between the individual entity and the corporate entity, or two corporate entities, and treating that which is in law two entities, as in truth and in fact, and for all economic purposes, as one entity.

It may be said parenthetically that Congress has followed the same idea in providing for consolidated returns of affiliated corporations. The following are some of the cases in which this procedure has been recognized: *In re Muncie Pulp Co.*, 139 Fed. 546; *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330; *Gulf Oil Corporation* v. *Lewellyn*, 248 U. S. 71; *McCaskill Co.* v. *United States*, 216 U. S. 514–5.

It is true that in most of the cases reported the corporation entity was ignored in order to circumvent the perpetration of fraud upon the Government, but certainly it will not be contended that those cases do not justify a like course to be pursued in order to do justice to the taxpayer. In the instant case the facts are disclosed by the record that H. M. Wagner owned, in his individual capacity, the entire Baltimore business, and owned 396 out of the 400 shares of stock of the corporation business in Washington; that he dictated the business policy of each business; that he operated both businesses in conjunction by purchasing merchandise in large quantities in his individual name for both houses, in one purchase contract, and only allocated such merchandise by shipping orders; and the facts clearly indicate that in the particular instance of the purchase of " shorts " on the stock market, he bought such shorts to offset losses which his judgment told him would be the result of the unwise action on the part of his son and Remmert in buying too much sugar for future delivery, not alone to the Baltimore house, but to both houses. The loss that did accrue to the corporation by its having to take its proportion of the high priced sugar on those future deliveries was H. M. Wagner's loss, 99 per cent as much as if the Washington business had been an individual rather than a corporate business.

The Washington house suffered its proportion of loss on the handling of that high priced sugar, 12 cars out of the total 36 cars so purchased, and in equity is entitled to the same proportion of the profits made on the purchase of shorts that was made for the ·expressed purpose of offsetting that particular loss which Wagner believed would result.

The United States Supreme Court, in *Eisner* v. *Macomber*, 252 U. S. 213, 214, states:

We have no doubt of the power or duty of a court to look through the form of the corporation and determine the question of the stockholder's right in order to ascertain whether he has received income taxable by Congress.

I have not seen a case reported that, in my judgment, more perfectly justifies the disregarding the corporate entity and treating as an entity·that which is in fact one man's one business.

TRUSSELL and SIEFKIN concur in the dissent.