**292**

In the Matter of McALLESTER HO-
SIERY MILLS, INC.
No. 23934.

United States District Court
E. D. Tennessee, S. D.
March 27, 1963.

McAllester & McAllester, Chattanooga, Tenn., for bankrupt.

Noone, Moseley & Noone, Miller, Martin, Hitching, Tipton & Lenihan, Strang, Fletcher, Carriger & Walker, Chattanooga, Tenn., for petitioning creditors.

FRANK W. WILSON, District Judge.

This case is before the Court upon the petition of creditors to review the action of the Referee in Bankruptcy in ordering the refund of a deposit upon failure of confirmation of an arrangement under Chapter XI of the Bankruptcy Act.

Upon June 21, 1962 McAllester Hosiery Mills, Inc. filed a petition under Chapter XI. In furtherance of the plan of arrangement submitted under this petition a deposit of $33,500 was made with the Bankruptcy Court upon September 21, 1962. The deposit was made on behalf of the debtor by cashier's checks made payable to "Sam J. McAllester, Jr., Trustee" and by him endorsed to the Court. As it appears from the record, Mr. Sam J. McAllester's only connection with the McAllester Hosiery Mills, Inc. is as attorney for the said debtor. After the making of the deposit, the debtor failed to file any application for confirmation of the plan, but instead filed an application to withdraw the plan and to be adjudged a bankrupt. The debtor was thereupon adjudged a bankrupt. An application was then filed by Sam J. McAllester for return of the $33,500 deposit. Return of the deposit was resisted by the creditors. At the hearing before the Referee, William L. McAllester, President of McAllester Hosiery Mills, Inc., testified that he procured the funds for making the deposit, that $1500 of the deposit was from his own funds and that

the remaining $32,000 was from other sources which he declined to identify other than to assert that no part of the deposit was from assets of the bankrupt. The Referee found as a fact that no part of the deposit came from the estate of the bankrupt and ordered the deposit to be returned to Mr. Sam J. McAllester, Jr., Trustee, for the benefit of the party or parties making the deposit.

No error appears in the Referee's findings of fact on the basis of the record before him. Moreover, the Referee's findings of fact are conclusive upon this Court unless "clearly erroneous." See General Order No. 47.

However, it was contended by the creditors that the Referee had been in error in precluding further cross-examination of William L. McAllester as to the source of the deposit. By a former opinion this Court ordered the cross-examination of William L. McAllester reopened and permitted the creditors to offer additional testimony upon the source of the deposit.

■ A hearing was held before this Court in which William L. McAllester was further cross-examined as to the source of the deposit. Although he continued to assert that no part of the deposit came from the assets of the bankrupt, he testified as to the source of the funds in a most reluctant and evasive manner. He identified the source of the deposit as coming from cash held by him. The cash in turn had been acquired in March or April 1962 when he withdrew approximately $50,000 from various deposits in federal savings and loan accounts in his name as trustee for his children. He testified to these deposits having been originally made by him without the knowledge of his children and likewise withdrawn without their knowledge. This testimony was very substantially different from the testimony Mr. McAllester had given before the Referee. However, it still does not appear from the record that any portion of the funds came from or at any time belonged to the assets of the bankrupt. As a result of the reopening of the proof,

the source of the deposit has been traced by the creditors to funds withdrawn from federal savings and loan accounts in March and April 1962. The evidence still fails to establish any connection between the deposit and the estate of the bankrupt. The finding of the Referee that no part of the deposit originated from the assets of the bankrupt corporation must therefore be affirmed.

The Referee then concluded as a matter of law that if the deposit came from sources outside of the estate, upon failure of the plan to receive approval of the Court, the deposit should be returned to those sources, and in support of this legal conclusion cited Collier on Bankruptcy, Vol. 8, p. 567, sec. 5.36; In re Realty Associates Securities Corporation, 2 Cir., 69 F.2d 41; In re Wiener, 2 Cir., 215 F. 278; In re Bryer, 2 Cir., 287 F. 123; In re Morris & Rice, 1 Cir., 258 F. 712; In re Gitnig, 3 Cir., 57 F. 2d 43; Cohn v. Moskowitz, 3 Cir., 60 F. 2d 804; Zavelo v. Reeves, 227 U.S. 625, 33 S.Ct. 365, 57 L.Ed. 676; In re Famous Furniture Company, D.C., 43 F.Supp. 946.

It is contended by the creditors, however, that even though the deposit did not originate from assets of the bankrupt, but rather originated from other sources, upon failure of confirmation, the deposit became an asset of the bankrupt estate. The cases relied upon by the Referee are sought to be distinguished and in particular it is pointed out that the holding in the case of In re Famous Furniture Company, D.C., 43 F.Supp. 946, was based upon an express stipulation that the deposit should be refunded to the depositors upon failure of confirmation of the plan, whereas no such express stipulation was made here at the time of the deposit.

It further appears to be the position of the creditors that, regardless of the original source of the deposit, the deposit was in reality an asset of the bankrupt corporation, either as a loan or as a capital contribution. In support of this position the creditors rely upon the case of In re Portage Wholesale Company, 7

Cir., 187 F.2d 887. In that case the arrangement plan, as approved by the Court, called for a deposit of $175,000 to be made. Thereafter the sum of $25,000 was deposited by the debtor, but the debtor defaulted in putting up the remaining $150,000. The debtor was then adjudged a bankrupt and the $25,000 deposit was ordered included in the bankruptcy estate. The president of the debtor corporation thereupon petitioned to recover the deposit upon the ground that he had borrowed the sum personally rather than in the corporate name. The Court however found as a fact that the money was borrowed by the corporation and deposited by the corporation. In refusing to return the $25,000 deposit, the Court further held that upon confirmation of the arrangement the money belonged to the estate of the bankrupt and became subject to the payment of the debts of the bankrupt estate. It is not believed that the Portage case would be authority for refusing the return of the deposit in this case. In the first place, the Court is unable to find that the deposit was in fact a loan to or capital deposit in the debtor. The monies used for the deposit so far as it appears from the record were the individual funds of William L. McAllester and he had no understanding with the debtor before depositing them other than to put them up in the special deposit, with any understanding between the debtor and McAllester to await the approval of the plan by the Referee. Any understanding as to whether the deposit would constitute a loan or a capital contribution never materialized when the arrangement was not approved by the Referee. In the second place, unlike in the Portage case, the plan of arrangement was never confirmed by the Referee in this case, with the result that the special purpose for which the deposit was made was never achieved.

Although no express stipulation for return of the deposit was made at the time of the $33,500 deposit in this case, and although such express stipulation might properly have been made and thereby, under the holding in the In re Famous Furniture Company case, have avoided any problem with respect to return of the deposit, it is apparent that the deposit was made for a particular purpose, which purpose was to support and further the plan of arrangement. That purpose failed when approval of the plan of arrangement by the Bankruptcy Court failed. The deposit being made for a special purpose, and that purpose having failed to materialize, the deposit should be returned unto the depositors. To hold otherwise would be to expose any third party depositors, unless express provision for return of the deposit were made, to the hazard of becoming general creditors of the bankrupt estate. It would render the securing of deposits in furtherance of arrangements under Chapter XI more difficult and improbable. It would disregard the obvious fact that this was a deposit for a special purpose. An express stipulation could scarcely more fully inform the creditors that the deposit was for a special purpose.

The Court therefore concludes that the Referee correctly held that upon a showing that the deposit in a Chapter XI arrangement was not the unconditional asset of the debtor but rather came from sources outside of the debtor's estate, upon failure of the arrangement to be approved by the Court, the deposit should be returned to its source, even in the absence of an express stipulation to this effect.

A review of the record before the Referee as well as before this Court can only lead to the conclusion that this appeal was either caused by or greatly contributed to by the evasive, reluctant, and hostile attitude demonstrated by William L. McAllester in his cross-examination and by his failure to make a forthright statement as to the source of the funds, which would have probably concluded these proceedings long ago. The costs of this appeal and the allowance of a reasonable attorney fee in the total sum of $850 unto the attorneys who sought to protect the assets of the bankruptcy es-

tate should be taxed against the deposit prior to disbursement to the depositor. Remington on Bankruptcy, Vol. 9, sec. 3671.

An order will enter accordingly.